**MILLER SHAH LLP**
Kolin Tang (SBN 279834)
Email: kctang@millershah.com
3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiff and the Proposed Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN L. URBAN, On Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TESLA INC., d/b/a TESLA MOTORS, INC., <br><br> Defendant. | CIVIL ACTION NO: <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

Plaintiff, John L. Urban ("Plaintiff" or "Urban"), by and through his attorneys, files this Complaint on behalf of himself and all others similarly situated against Defendant, Tesla Inc. d/b/a Tesla Motors, Inc. ("Defendant" or "Tesla"), and alleges as follows:

#### NATURE OF THE ACTION

1.      Plaintiff brings this action individually and on behalf of a nationwide class for the benefit and protection of purchasers and lessees of Defendant's model years 2014-2016 Model S vehicles ("Vehicle(s)").  As alleged herein, Defendant's Vehicles are defective insofar as they are equipped with door handles that routinely fail after or within only a few years of normal use (the "Defect").  When the door handles fail, drivers and passengers are unable to enter the Vehicle through the affected door, which creates a significant safety risk in emergency situations.

2.     At all relevant times, Defendant knew or should have known about the Defect (more fully defined below), including the significant safety issues it creates.  Additionally, Tesla knew or should have known about the Defect when, among other things, testing the Vehicles, especially as the Vehicle provides no alternative method to open an affected door from the outside when the Defect manifests, and the Defect began manifesting soon after Defendant first started selling and leasing the Vehicles to consumers.

3.     Nevertheless, and despite its duty to do so, Defendant did not and does not disclose the Defect to consumers.  Accordingly, Defendant has engaged in unfair, deceptive, and misleading consumer practices with respect to the marketing and sale and/or lease of the unsafe and defective Vehicles and has breached its warranty with the Vehicles' purchasers and lessees, including Plaintiff, and Plaintiff and other Vehicle purchasers or lessees did not receive the benefit of their bargain and have incurred damages.

4.     Plaintiff, thus, brings this action on behalf of himself and a proposed Class (defined below) of other similarly-situated Vehicle purchasers and lessees to obtain redress for Tesla's: violations of the California Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq*. ("CLRA") and the Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq*. ("UCL"); breach of express warranty under California law; and breach of the implied warranty of merchantability under California law.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the claims relating to the matter in controversy exceed $5 million, exclusive of interest and costs, the proposed Class has at least 100 members, and this is a class action in which certain of the Class members (including Plaintiff) and Defendant are citizens of different states.

6.     Venue is proper in this District under 28 U.S.C. § 1391 because Tesla conducts significant amounts of business throughout this District, a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District, and Defendant was headquartered in this District and thus orchestrated the misconduct from this District during the period it marketed and sold the Vehicles.

7. At all pertinent times, Defendant engaged in the marketing, sale, and lease of the Vehicles, which are the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

8. Plaintiff is, and at all times relevant to this action has been, a resident of Maitland, Florida, and, thus, is a citizen of Florida.

9. Defendant is a Delaware corporation and is currently headquartered in Austin, Texas. Defendant was headquartered in Palo Alto, California, until December 2021, and still maintains a significant presence there, including the factory where it manufactured the Vehicles. Defendant markets, sells, and leases the Vehicles throughout the United States, including in this District.

## TESLA'S CALIFORNIA CONTACTS

10. Tesla was headquartered at 3500 Deer Creek Road, Palo Alto, California, at the time it manufactured, marketed, and sold the Vehicles.

11. Defendant continues to conduct substantial business in California, with a significant portion of its sales and leases made in California.

12. California hosts a significant portion of Defendant's U.S. operations, including, *inter alia*, its sales and service offices, factory, and financial service offices. Defendant maintains 60 stores or galleries in California, a much higher number than in any other state or country where Tesla is present.

13. In addition, the conduct described below that forms the basis for each and every Class member's claims against Defendant emanated from its headquarters in California and is consistent with directives of its personnel in California.

14. Defendant's marketing personnel were located at its California headquarters, and the marketing schemes, as well as the Owner's Manuals describing the safety and performance of the Vehicles and website representations (which omitted to describe the Defect), were made and implemented from Defendant's California headquarters.

15. Defendant's California personnel implemented its deceptive marketing scheme and other materials and have refused to repair the Defect in Plaintiff's and the proposed Class

members' Vehicles.

16.     Defendant has significant contacts with the State of California, and the conduct at issue herein emanated from California.

## SUBSTANTIVE ALLEGATIONS

17.     This is a class action brought against Defendant on behalf of Plaintiff and all persons who purchased or leased a model year 2014-2016 Model S Vehicle.

18.     Tesla was founded in 2003, and launched its first vehicle, the Roadster, in 2008. Thereafter, Tesla designed an all-electric sedan, called the Model S.[1]

19.     Tesla's sales model is unlike that of traditional car manufacturers, in that it does not sell its vehicles through authorized dealerships.  All Tesla sales and leases are conducted online, either by a consumer independently, or at one of Tesla's in-person stores or showrooms.[2] Every sale or lease of a Tesla vehicle, including the Vehicles, is a direct transaction between the consumer and Tesla, unless purchased used from a third party.

### A.     Tesla's Representations And Warranty

20.     Defendant describes the Vehicles as "the best car in its class in every category," claiming that, by "[c]ombining safety, performance, and efficiency, Model S has reset the world's expectations for the car of the 21st century with the longest range of any electric vehicle, over-the-air software updates that make it better over time, and a record 0-60 mph acceleration time of 2.28 seconds as measured by Motor Trend."[3]

21.     Tesla also represented that safety is a paramount concern for its Vehicles, stating that "improving safety is our primary goal, even after a customer purchases their car," and has explained that the "massive amount of real-world data gathered from our cars' eight cameras, 12 ultrasonic sensors, and forward-facing radar" helps Tesla ensure that accidents are less likely to

---

[1] *About Tesla*, Tesla, accessible at https://www.tesla.com/about (last visited Apr. 22, 2020).

[2] Peter Aitken, *The 6 Main Differences Between Buying a Tesla and Buying a Car from Other Brands*, Business Insider (Jul. 18, 2019), accessible at https://www.businessinsider.com/tesla-vs-other-car-difference-electric-charger-2019-7 (last visited Apr. 22, 2020).

[3] *About Tesla*, Tesla, accessible at https://www.tesla.com/about (last visited Apr. 22, 2020).

occur.[4]

22.    Specifically, Tesla has stated that the "Model S gets faster, smarter, and better as time passes" with updates ensuring "added functionality, enhanced performance, and improved user experience," including "important active safety features."[5]

23.    The Vehicles are covered by a New Vehicle Limited Warranty, which includes a Basic Vehicle Limited Warranty[6] and a Parts, Body & Paint Repair Limited Warranty[7] (collectively, "Warranty").  Under the Warranty, Tesla warrants that it will cover the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla that occur under normal use for a period of four years or 50,000 miles, whichever comes first.

24.    However, despite Defendant's aforementioned representations regarding driver safety and the Vehicles' high-performance, and warranting that it will "repair or replace" any defective body parts, including door handles, Defendant knowingly sold its Vehicles with defective door handles as discussed below, but did not and does not disclose that Defect.

### B.    The Nature Of The Defect

25.    The Vehicles' door handles, like the door handles of all other automobiles, are intended to allow drivers and passengers to safely enter and exit the Vehicles.  Unlike most other vehicles, however, the Vehicles' door handles are flush with the doors when not in use, and are designed to automatically detect an approaching person and present themselves through a motorized mechanism so the person can open the door:

---

[4] The Tesla Team, *More Advanced Safety for Tesla Owners*, Tesla (May 2, 2019), accessible at https://www.tesla.com/blog/more-advanced-safety-tesla-owners (last visited Apr. 28, 2020).

[5] The Tesla Team, *Model S Has You Covered*, Tesla (Mar. 19, 2015), accessible at https://www.tesla.com/blog/model-s-has-you-covered (last visited Apr. 28, 2020).

[6] New Vehicle Limited Warranty, Model S, Model X, Model 3, Model Y, accessible at https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf (last visited Apr. 28, 2020).

[7] Tesla Parts, Body, and Paint Repair Limited Warranty, accessible at https://www.tesla.com/sites/default/files/downloads/tesla-parts-accessories-body-repair-limited-warranty-en-us.pdf (last visited Apr. 28 2020).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 

"Flushed"                                    "Presented"

26.     A person can only open a door through the Vehicles' door handle when outside of the Vehicle.

27.     After or within a few years of normal, day-to-day usage, the detection and/or motorized mechanism has a high propensity to stop working as intended and designed.  When the Defect manifests, the door handles stay retracted and do not present themselves to users, preventing the user from opening that Vehicle door from the outside.  As a result, such passenger or driver is unable to safely enter the Vehicles and must rely on other doors where the Defect has not yet manifested.  This poses a safety risk because users are potentially locked out of the Vehicles at times of necessity or emergency.

28.     Indeed, the Defect's safety issues have been linked to at least one fatality.  On March 4, 2019, the National Highway Transportation Safety Administration ("NHTSA") and the National Transportation Safety Board ("NTSB") announced they were investigating a fatal Vehicle crash where emergency responders were unable to reach the victim, as the Vehicle's door

handles failed to present themselves while the car was burning.[8]

### 1. *Plaintiff's experience with the Defect*

29.     On or about April 5, 2015, Plaintiff ordered his Vehicle, a model year 2015 Tesla Model S P85D Ludicrous, directly from Tesla's headquarters at the time in Palo Alto, California, via Tesla's website, with delivery to take place on or about June 4, 2015.  Plaintiff paid an additional $5,000 for the Vehicle to be upgraded to "Ludicrous" mode.  One of the reasons Plaintiff purchased the Vehicle was because of its high-tech features, including retractable door handles that improved the car's aerodynamics.

30.     Plaintiff purchased his Vehicle primarily for personal, family, or household use.

31.     The Defect first manifested in Plaintiff's Vehicle during its Warranty period, when the passenger side rear door handle stopped presenting itself.  Plaintiff was able to secure Warranty-covered repairs for it and thus took no further action.

32.     After the Vehicle's Warranty expired on June 6, 2019, the Defect manifested in the front passenger side door of Plaintiff's Vehicle, when the handle also stopped presenting itself in February 2021.  As a result, Plaintiff paid $298.20 out-of-pocket on or about February 16, 2021 to remedy the Defect for that door.

33.     On or about May 2022, the Defect manifested in the front driver side door of Plaintiff's Vehicle, with the handle also failing to present itself for use.  As a result, Plaintiff paid $300.60 out-of-pocket on or about May 31, 2022 to remedy the Defect for that door.  Until the repairs were performed, Plaintiff was forced to enter his Vehicle via the passenger side and climb over to open the front driver side door from the inside.

34.     In March 2020, before the Defect could manifest, the rear driver side door handle of Plaintiff's Vehicle was replaced as a result of an accident caused by another driver.

35.     After the Defect manifested in the front driver door in May 2022, Plaintiff began investigating the Defect, as three out of the Vehicle's four door handles have failed since Plaintiff

---

[8] *See* Reuters, *NHTSA and NTSB investigating 2 fatal Tesla crashes in Florida* (Mar. 4, 2019) https://www.autoblog.com/2019/03/04/nhtsa-ntsb-2-florida-fatal-tesla-crashes/ (last visited Sep. 13, 2022).

purchased his "premium" Vehicle.  Indeed, all four door handles would have likely failed had the rear driver side door handle not been replaced in March 2020 as noted above.  Upon discovering that the problem was prevalent throughout the Vehicles, Plaintiff asked Tesla to cover his out-of-pocket costs because it was a common defect.  Tesla refused.

36.    Plaintiff has followed Tesla's instructions as set forth in the Vehicle's manual, including installing software updates when they become available.  At all times, Plaintiff has used his Vehicle in a manner that was both foreseeable and in which it was intended to be used.

37.    Plaintiff would not have purchased the Vehicle or would have paid less for it had he known about the Defect prior to purchase.

### 2. Class members' experiences with the Defect

38.    Plaintiff's experiences mirror those of numerous other Vehicle purchasers and lessees.  The internet contains numerous complaints from owners and lessees who, like Plaintiff, have experienced the Defect's manifestation.

39.    Tesla operates an online discussion forum restricted to verified Vehicles owners. The following is a sample of complaints appearing on Tesla's online forum:[9]

**Submitted by patrick40363**
**Posted in July 2016**
**Location unknown**

> My driver door handle will no longer auto present itself.  I can open the door from the inside or if I can manually get the handle out a bit I can open from the outside.  Is there a known fix?  Over 2 hour drive if I have to go to a service center.

**Submitted by Smilepak_93449625**
**Posted in May 2018**
**Location unknown**

---

[9] All complaints listed from Tesla's online discussion forum were previously accessible at the following web address:
https://forums.tesla.com/search?adv=&search=door+handle&title=&author=&cat=all&subcats=1&tags=&discussion_idea=1&group_group=1&discussion_discussion=1&comment_comment=1&discussion_poll=1&discussion_question=1&comment_answer=1&within=1+day&date=
(last active when visited on June 3, 2022).  It appears Tesla has closed its online discussion forum to launch a social platform, and these postings are no longer publicly available.

This morning, my front passenger door handle won't present when [sic] unlock the door or press on it. All other doors seem to be fine. It would present itself when opening the door from the inside. Once it is presented, you can open and close the door as many time [sic] and it remain presented. When it start [sic] to retract in, that is when it won't come back out again.

My MS is 2015 that just went out of warranty by 12k miles. How much is it typically to get this repair? I read a few [sic] thread and it sound like most people, their issue is the door handle won't retract or when presented, they can not [sic] open the door. Mine sound [sic] a bit different.

40.     In addition, many complaints have been posted on another Tesla customer forum, Tesla Motors Club, discussing defects in Model S door handles.

**Submitted by Skotty**
**Posted on September 7, 2017**

But the door handles are starting to annoy me. I've had to have a door handle serviced about 5 times now in my 1.5 years of ownership, if I include service scheduled for tomorrow.

**Submitted by Max***
**Posted on September 7, 2017**

I have a mid 2015, and I've been through 5 door handles so far.

**Submitted by sandpiper**
**Posted on September 8, 2017**

I've been through 4 on my very late 2014. I spoke to the supervisor at the SC, the last time that mine was in. I had wanted him to change ALL of the handles to a more recent design. He commented that there had been no change in the design for the older cars, but that the ones in the newer cars were more reliable. Apparently they just keep swapping the old faulty units with brand new faulty units.

I was a little frustrated by this; I asked him if Tesla's plan was to just keep swapping them until the warranty runs out. He was very polite, and agreed that they should have fixed the design, but he hadn't seen anything yet. I interpreted that response as "yes" . . . they will just keep swapping them until the warranty runs out.

**Submitted by ElectricHoo**
**Posted on January 24, 2018**

The drivers [sic] side handle failed—stopped presenting—on my MS 75D after about 4 weeks.  Tesla sent a mobile truck to fix it in 1.5 days.  The technician—who was excellent—said that door handles are his No. 1 service job, but that Tesla introduced a Generation 3 door handle in 2017 that is much better.  He said that I was the first Gen 3 handle he's had to replace, although it's more common to [sic] for the Gen 3 handles to need recalibration or a new computer.  Each handle is controlled by a little computer module in each door, and those sometimes fail, although not in my case.  He showed me a Gen 2 and Gen 3 handle set side-by-side, and I can say that the Gen 3 handles do look like an improvement.  The Gen 2 handles had at least 3 small limit switches that looked like they were begging to get fouled or broken, plus its electronics were potted in a cup on the door handle unit itself, where it was much more vulnerable to moisture than inside the cabin side of the door like the Gen 3.  Also, the Gen 3 has a better waterproof covering than the Gen 2.  I hope this translates into better reliability down the road.

**Submitted by Brian May**
**Posted on June 14, 2020**

Both left hand door handles on my Tesla stopped working.  The motor whirls away, but the handle doesn't extend.  I have been quoted almost $300 each door to fix [sic].  As in the car just left warranty.

However I claim this was a known defect in the door handles at the time the car was manufactured.  I previously asked for the other doors to be fixed while under warranty, but they refused.  As a result, I feel statuary [sic] warranty should apply.

41.     Defendant has had knowledge that its Vehicles contain the Defect, and yet continued to market its Vehicles without disclosing the existence of the Defect to consumers. Despite the numerous consumer complaints posted on the NHTSA's website, on Tesla's online forums, communicated to Tesla through consumers seeking service related to the Defect, and disclosed to Tesla through investigations, Tesla has no solution to this serious problem besides replacing the door handle with another defective door handle, and continues to omit the existence of the Defect from its marketing.

42.     Defendant had knowledge that its omissions regarding the safety and performance of the Vehicles were misleading and material to consumers, yet it continually failed to disclose the Defect for each subsequent model year Vehicle to Plaintiff and members of the proposed Class, despite the fact that Defendant knew the Vehicles were defective.

43.     Defendant's omissions are clearly meant to mislead consumers as to the safety and

performance of the Vehicles.  As a direct and proximate result of Defendant's conduct, Plaintiff and the proposed Class have suffered, and continue to suffer, injury in fact, ascertainable loss, and lost money.  Defendant, despite having knowledge that its omissions are misleading to Plaintiff and the proposed Class, continues to market the Vehicles in a deceptive manner.

44.    Plaintiff and the proposed Class are at risk of suffering further injury if the relief sought is not granted.

### C.    Tesla's Knowledge Of The Defect And Failure To Remedy The Defect

45.    Defendant has long known or should have known of the Vehicles' Defect from multiple sources.  These sources include Vehicle testing data; warranty claims data; consumer complaints made directly to Defendant and collected by NHTSA; and consumer complaints posted on public online forums, such as the ones referenced above.  By its own admission, Tesla has stated that "[s]ince we own all of our service centers, we are aware of every incident that happens with our customer cars and we are aware of every part that gets replaced.  Whenever there is even a potential issue with one of those parts, we investigate fully."[10]

46.    Yet, Defendant has failed to notify purchasers and lessees of the Vehicle's Defect or otherwise disclose the nature or implications of the Defect.  Defendant did not include any such disclosures in its Owner's Manuals[11] or in any of its other representations about the Vehicles. Nor has Defendant made any efforts to inform purchasers and lessees of the Defect or otherwise inform them of the nature or implications of the Defect.  Indeed, Tesla denies any warranty coverage to address the Defect if it manifests after the warranty period, despite the Defect existing from the time the Vehicles are manufactured.

47.    Moreover, Tesla has not found a solution to fully repair the Defect.  Instead, it simply replaces the defective door handle parts with equally defective parts, leaving consumers caught in a cycle of use, malfunction, and replacement.

---

[10] The Tesla Team, *A Grain of Salt*, Tesla (June 9, 2016), accessible at https://www.tesla.com/blog/grain-of-salt (last visited Apr. 28, 2020).

[11] *See* Tesla Model S Owner's Manual, accessible at https://www.tesla.com/sites/default/files/model_s_owners_manual_north_america_en_us.pdf (last visited Apr. 28, 2020) ("Model S Manual").

48.     In a tacit admission of the Defect's significance, Tesla redesigned the door handle for its post-2016 Model S vehicles, with the door handle design now believed to be in at least its 4th generation.  The door handles continue to include the auto-present feature upon a user's approach with a key fob or, if the vehicle is unlocked, by pressing on the door handle.  Accordingly, the redesign is purely a redesign of the door handle's interior workings to make it more reliable.  Upon information and belief, the Model S door handle has been made more reliable with each new generation of redesign and, now in at least its 4th generation of redesign, is far more reliable, with the door handle failure problem now being a relatively rare occurrence.

49.     Accordingly, Defendant's omissions regarding the Vehicles' safety features are false and deceptive, and constitute breach of express and implied warranties.

50.     As a result of Defendant's conduct, Plaintiff and members of the proposed Class have suffered injury in fact and have otherwise suffered damages, and have been harmed and will continue to be harmed in the future, unless Defendant is held accountable through this litigation.

51.     Plaintiff seeks injunctive relief, actual damages, disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class, as defined herein.

**TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL**

52.     Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Defect and omissions alleged herein.  Through no fault or lack of diligence, Plaintiff and members of the Class were deceived regarding the Vehicles and could not reasonably discover the Defect or Defendant's deception with respect to the Defect.  Defendant continues to deny the existence and extent of the Defect, even when questioned by Plaintiff and members of the Class.

53.     Plaintiff and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendant was concealing a defect and/or the Vehicles contained the Defect and the corresponding safety risk.  As alleged herein, the existence of the Defect was material to Plaintiff and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiff and members of the Class

could not have discovered, through the exercise of reasonable diligence, the existence of the Defect or that Defendant was concealing the Defect.

54.     At all times, Defendant was and is under a continuous duty to disclose to Plaintiff and members of the Class the true standard, quality, and grade of the Vehicles and to disclose the Defect and corresponding safety risk due to its exclusive and superior knowledge of the existence and extent of the Defect in the Vehicles.

55.     Defendant knowingly, actively and affirmatively concealed the facts alleged herein.  Plaintiff and members of the Class reasonably relied on Defendant's knowing, active, and affirmative concealment.

56.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff brings this lawsuit, both on behalf of himself and as a class action, on behalf of similarly situated purchasers and lessees of the Vehicles pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3), and seeks to represent the following Class, defined as follows:

> All owners and lessees of Defendant's model year 2014-2016 Model S Vehicles purchased or leased in the United States.

Excluded from the proposed Class are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned.  Plaintiff reserves the right to amend the definition of the Class if discovery and/or further investigation reveal that the Class should be expanded or otherwise modified.

58.     **Numerosity/Impracticability of Joinder:** There are so many members of the Class that joinder of all members is impracticable.  Tesla delivered more than 30,000 Model S

Vehicles in 2014,[12] over 50,000 Model S Vehicles in 2015,[13] and more than 76,000 Model S Vehicles in 2016.[14]   Accordingly, Plaintiff estimates that there are thousands of members in the Class who are readily identifiable from information and records in Defendant's possession, custody, or control.   The disposition of these claims will provide substantial benefits to the members of the Class.

59.   **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the Class.   These common legal and factual questions, which do not vary from members of the Class and which may be determined without reference to the individual circumstances of any members of the Class, include, but are not limited to, the following:

a)   whether the Vehicles suffer from the Defect;

b)   whether the Defect causes the door handles to malfunction, preventing Plaintiff and members of the Class to safety enter the Vehicles;

c)   whether the Vehicles have suffered a diminution of value as a result of the Defect;

d)   whether Defendant concealed facts from Plaintiff and members of the Class about the performance and safety of the Vehicles and/or about the Defect;

e)   whether Defendant knew, or should have known, that its representations were false or misleading, or that the representations omitted material information;

f)   whether Defendant had a duty to disclose the Defect to Plaintiff and members of the Class;

g)   whether Defendant's conduct was a violation of the CLRA;

h)   whether Defendant's conduct was a violation of the UCL;

i)   whether Defendant's conduct was a breach of express warranty under California law;

---

[12] *See* https://forums.tesla.com/forum/forums/how-many-cars-sold-2014-and-2015 (last visited Apr. 30, 2020).

[13] Yoni Heisler, *Tesla Sold More Than 50,000 Model S Sedans in 2015, a New Annual Record*, BGR (Jan. 3, 2016), accessible at https://bgr.com/2016/01/03/tesla-model-s-sales-2015/ (last visited Apr. 30, 2020).

[14] Andrew J. Hawkins, *Tesla Delivered Over 76,000 Vehicles in 2016, Falling Slightly Short of Goal*, The Verge (Jan. 20, 2017), accessible at https://www.theverge.com/2017/1/3/14159292/tesla-q4-2016-delivery-production-model-s-x (last visited Apr. 30, 2020).

j)      whether Defendant's conduct was a breach of implied warranty of merchantability under California law;

k)      whether Defendant's conduct as alleged herein violates public policy; and

l)      whether Plaintiff and the members of the Class are entitled to damages, restitution, equitable relief, and/or other damages and other relief, and, if so, the amount and nature of such relief.

60.     **Typicality and Adequacy:**  Plaintiff's claims are typical of the claims of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiff does not have any interests antagonistic to those of the Class.  Plaintiff's counsel are experienced in the prosecution of this type of litigation.  The questions of law and fact common to the members of the Class, some of which are set forth above, predominate over any questions affecting only individual members of the Class.

61.     **Superiority:**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for members of the Class to prosecute their claims individually.  The litigation and trial of the Class-wide claims are manageable.

62.     Unless the Class is certified, Defendant will improperly retain monies that it received from Plaintiff and members of the Class as a result of its conduct.

63.     Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

### COUNT I
### Violation of Consumers Legal Remedies Act
### California Civil Code §§ 1750, *et seq.*

64.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

65.     This cause of action is brought under the CLRA.  Plaintiff and members of the Class are consumers as defined by California Civil Code § 1761(d), and the Vehicles constitute goods within the meaning of the CLRA.

66.     Defendant has violated the CLRA by engaging in deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and that

did result in, the sale and/or lease of the Vehicles to Plaintiff and members of the Class.

67.     The omission of the door handle defect was material, as reasonable consumers such as Plaintiff and the Class members would deem such a defect important in determining whether to purchase the Vehicle.

68.     Defendant had a duty to disclose the Defect to consumers because: (a) it had exclusive knowledge of the existence and prevalence of the Defect, which was not reasonably accessible to Plaintiff or other Class members; (b) Defendant actively concealed the Defect from Plaintiff and the other Class members; and (c) Defendant's representations regarding the safety and performance of its Vehicles were misleading without a concurrent disclosure of the Defect.

69.     Plaintiff and members of the Class, in purchasing and leasing the Vehicles, would have considered the omitted facts set forth herein as material to their purchasing/leasing decision. Plaintiff and members of the Class have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

70.     Defendant intended that Plaintiff and members of the Class would rely on these representations and omissions, and they did, in fact, rely on these representations and omissions.

71.     In accordance with California Civil Code § 1780(a), Plaintiff and members of the Class seek injunctive relief for Defendant's violations of the CLRA.

72.     In accordance with California Civil Code §§ 1782(a) and (d), Plaintiff provided Defendant with the appropriate notice and demand on or about July 25, 2022, but Defendant has denied the existence of the Defect and has refused to provide any Class-wide relief to members of the Class.

73.     Plaintiff seeks for himself and members of the Class compensatory and punitive damages under the CLRA, and also to recover attorneys' fees and costs pursuant to California Civil Code §§ 1780 and 1781.

### COUNT II
**Unlawful, Unfair, and Fraudulent Business Practices in Violation of
California Business and Professions Code §§ 17200, *et seq*.**

74.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

75.     The UCL defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

76.     Defendant has violated the UCL by omitting the fact that the Vehicles contain the Defect and by failing to inform purchasers and lessees how to respond when the Defect manifests.

77.     By engaging in the above-described acts and practices, Defendant has committed an unfair business practice within the meaning of the UCL.  Consumers/Class members have suffered substantial injuries they could not have reasonably avoided other than by not purchasing or leasing the Vehicles.

78.     Defendant's acts and practices have deceived and/or are likely to deceive members of the Class and the public and, thus, constitute a fraudulent business practice.

79.     As discussed above, Plaintiff and members of the Class purchased and/or leased the Vehicles directly from Defendant and were injured in fact and lost money as a result of such acts of unfair competition.

80.     The injuries suffered by Plaintiff and members of the Class are greatly outweighed by any potential countervailing benefit to consumers or to competition.  The injuries suffered by Plaintiff and members of the Class should have or could have been reasonably avoided.

81.     Defendant received the funds paid by Plaintiff and members of the Class and profited by omitting material facts about the Vehicles that it otherwise would not have sold or leased.  Defendant's revenues attributable thereto are, thus, directly traceable to the substantial amount of money paid out by Plaintiff and members of the Class.

82.     Unless Defendant is enjoined from continuing to engage in the unlawful, unfair, and fraudulent business acts and practices as described herein, which conduct is ongoing, Plaintiff and members of the Class will continue to be injured by Defendant's conduct.

83.     Defendant, through its acts of unfair competition, has acquired money from the Class.  Plaintiff and members of the Class request this Court to enjoin Defendant from continuing to violate the UCL.

84.     The unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date.  Plaintiff and members of the Class, therefore, are entitled to relief

described below as appropriate for this cause of action.

## COUNT III

### Breach of Express Warranty Under California Law

85.    Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

86.    As an express warrantor, manufacturer, and merchant, Defendant had certain obligations pursuant to its Warranty to repair and replace defects, including the Defect. Cal. Com. Code § 2313.

87.    Defendant expressly warranted the door handles under its New Vehicle Limited Warranty and Parts, Body & Paint Repair Warranty, promising to repair or replace components that fail to function properly during normal use, for four years or 50,000 miles.

88.    However, Defendant sold the Vehicles knowing that the Defect causes serious safety issues when the Vehicles' door handles malfunction, so that Plaintiff and Class members are deprived of warranted features of the Vehicles.

89.    The Defect at issue in this litigation was present at the time of sale and/or lease to Plaintiff and members of the Class.

90.    Defendant breached (and continues to breach) its warranties because it wrongfully, uniformly, and repeatedly refuses to repair the Defect, forcing Plaintiff and members of the Class to either (a) drive their Vehicles at the risk of the door handles malfunctioning, putting Plaintiff and members of the Class at risk, or (b) not drive their Vehicles at all in order to avoid such a risk.

91.    Plaintiff and members of the Class have used their Vehicles in a manner consistent with the Vehicles' intended use, and have performed each and every duty required under the terms of the Warranty, including presentment, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

92.    Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

93.     In addition, upon information and belief, Defendant received numerous complaints, notices of the need for repair and resulting safety issues, and requests for Warranty repairs and coverage relating to the Defect from other members of the Class, as defined herein.

94.     In its capacity as a supplier and warrantor, and by the conduct described herein, any attempt by Defendant to disclaim or otherwise limit its express warranties in a manner that would exclude or limit coverage for the Defect that was present at the time of sale and/or lease, which Defendant knew about prior to offering the Vehicles for sale and/or lease, and which Defendant did not disclose and did not remedy prior to (or after) sale and/or lease, is unconscionable, and Defendant should be estopped from pursuing such defenses.

95.     Further, any such effort by Defendant to disclaim or otherwise limit liability for the Defect is null and void because Defendant has wrongfully, uniformly, and repeatedly refused and/or failed to properly repair or replace the defective door handles.

96.     As such, Defendant should be estopped from disclaiming liability for its actions.

97.     Accordingly, Plaintiff and members of the Class have suffered damages caused by Defendant's breach of the Warranty and are entitled to recover damages as set forth herein.

## COUNT IV

### Breach of the Implied Warranty of Merchantability Under California Law

98.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

99.     By operation of law, Tesla, as a manufacturer of the Vehicles and as offeror of the Warranty, impliedly warranted to Plaintiff and Class members that the Vehicles they purchased or leased were of merchantable quality and fit for their ordinary and intended use, including being free of defective door handles, contrary to the existence of the Defect in the Vehicles as described herein.

100.    Consumers purchased and/or leased their Vehicles directly from Tesla, and are, therefore, the intended beneficiaries of Tesla's Warranty.  Plaintiff and Class members were intended to be the ultimate users of the Vehicles, and Tesla's express Warranty was designed for and intended to benefit end-user purchasers/lessees.

101.    Tesla breached the implied warranty of merchantability in connection with its sale and/or lease and distribution of the Vehicles. At the point of sale and/or lease, the Vehicles contained a latent Defect which rendered them defective and unfit for their ordinary and intended purposes.

102.    Had Plaintiff and Class members known that the Vehicles had the Defect, they would not have purchased/leased them or would not have purchased/leased them at the price they paid.

103.    Plaintiff and Class members furnished Tesla an opportunity to cure its breach of warranty and complied with all obligations under the implied warranty of merchantability. Despite knowing the Vehicles were defective prior to or concurrent with their sale and/or lease, Tesla has refused to provide Plaintiff and Class members with appropriate and effective warranty relief.  As a result, Plaintiff and Class members are left without the functional Vehicles they reasonably expected when making their purchasing and/or leasing decisions.

104.    As a direct and proximate result of Tesla's breach of the implied warranty of merchantability, Plaintiff and Class members have sustained damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Class, prays for judgment as follows:

a)    Certification of the Class under Federal Rule of Civil Procedure 23;

b)    Appointment of Plaintiff as representative of the Class and his counsel as Class counsel;

c)    Compensatory and other damages for economic and non-economic damages;

d)    Restitution and disgorgement of Defendant's revenues or profits to Plaintiff and the members of the proposed Class;

e)    Statutory pre-judgment and post-judgment interest on any amounts;

f)    An Order requiring Defendant to provide corrective notice to Class members regarding the existence and nature of the Defect;

g)    Payment of reasonable attorneys' fees and recoverable litigation expenses

as may be allowable under applicable law; and

h)      Such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:      December 6, 2022                    Respectfully submitted,

By: */s/ Kolin Tang*
Kolin Tang
MILLER SHAH LLP
3 Embarcadero Center, Suite 1650
San Francisco, CA 94111
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

James C. Shah
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Email: jcshah@millershah.com

Matthew R. Watkins (to be admitted *pro hac vice*)
EDGAR LAW FIRM LLC
2600 Grand Blvd., Ste. 440
Kansas City, MO 64108
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
Email: mrw@edgarlawfirm.com

*Attorneys for Plaintiff and the Proposed Class*