1 | J. David Rowe (*Pro Hac Vice*)
*drowe@munckwilson.com*
2 | Robert E. Linkin (*Pro Hac Vice*)
*rlinkin@munckwilson.com*
3 | Jenifer C. Wallis (SBN 303343)
*jwallis@munckwilson.com*
4 | Ursula Smith (*Pro Hac Vice*)
*usmith@munckwilson.com*
5 | **MUNCK WILSON MANDALA, LLP**
1925 Century Park East, Suite 2300
6 | Los Angeles, California 90067
Telephone: (310) 855-3311
7 | Facsimile: (972) 628-3616

8 | Attorneys for Defendant
TESLA INC.

9

10 | **UNITED STATES DISTRICT COURT**

11 | **NORTHERN DISTRICT OF CALIFORNIA**

12

13 | JOHN L. URBAN, *on behalf of himself and all others similarly situated,*

14 |         Plaintiff,

15 | v.

16 | TESLA INC.,

17 |         Defendant.

Case No. 5:22-cv-07703-EJD

(Honorable Edward J. Davila)

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1), 12(B)(6), AND 9(B); MEMORANDUM OF POINTS AND AUTHORITIES**

18

19 | Judge: Hon. Edward J. Davila
Date: Thursday, June 8, 2023
Time: 9:00 a.m.
Place: Courtroom 4, 5th Floor

20

21 | Complaint Filed: December 6, 2022

22

23

24

25

26

27

28

Case No. 5:22-cv-07703-EJD

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

1

## NOTICE OF MOTION

2

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:

3

4

5

6

7

8

PLEASE TAKE NOTICE that on June 8, 2023 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edward J. Davila at the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, Defendant Tesla Inc. ("Tesla") shall and hereby does move the Court to dismiss Plaintiff's Class Action Complaint ("Complaint") with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b).

9

10

11

12

13

This Application is based on this Notice and supporting Memorandum of Points and Authorities, the Class Action Complaint filed herein, the supporting declarations of Toletti and Franzella, and accompanying exhibits, reply briefing in further support of this Application and supporting declarations and accompanying exhibits, as well as other written or oral argument that Tesla may present to the Court.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED:  February 27, 2023

Respectfully submitted,

**MUNCK WILSON MANDALA, LLP**

By:/s/ *Jenifer C. Wallis*
      Jenifer Wallis
      J. David Rowe (*Pro Hac Vice*)
      Robert Linkin (*Pro Hac Vice*)
      Ursula Smith (*Pro Hac Vice*)

      Attorneys for Defendant
      Tesla Inc.

1

1

2

# **TABLE OF CONTENTS**

**I.**   **INTRODUCTION AND SUMMARY OF RELIEF SOUGHT.** ....................................... 1

**II.**   **SUMMARY OF PLAINTIFF'S KEY ALLEGATIONS.** ............................................. 3

**III.** **ARGUMENT AND AUTHORITIES.** ..................................................................... 4

   **A.** LEGAL STANDARD. .......................................................................................... 4

   **B.** PLAINTIFF LACKS STANDING TO ASSERT CALIFORNIA CLAIMS. ...................... 5

     **1.** The Parties' Agreement to Apply Florida Law is Enforceable. ........................ 5

     **2.** Alternatively, Florida Law Applies Under Choice of Law Principles, Because it is Where the Transaction Took Place ........................................................................ 7

     **3.** Plaintiff Lacks Standing to Bring Claims Under California Law, so the Court Must Dismiss for Lack of Jurisdiction. ...................................................................... 7

     **4.** Plaintiff Also Lacks Standing to Seek Injunctive Relief................................... 9

     **5.** Plaintiff Lacks Standing to Assert Claims for Breach of Express Warranty. .................. 9

   **C.** PLAINTIFF'S PUTATIVE CLASS CAN NEVER BE CERTIFIED, SO THE COURT SHOULD DISMISS THE CLAIMS NOW. ......................................................... 10

     **1.** Plaintiff Has Failed to Show that California Has Significant Contacts With the Claims of the Class Members. ......................................................................... 10

     **2.** The Laws of the Class Members' Home States Will Govern Each Class Member's Claims Under California's Governmental Interest Test.................................. 11

     **3.** Plaintiff's Claims Should be Dismissed........................................................ 15

   **D.** PLAINTIFF'S CLAIMS UNDER CLRA ALSO FAIL TO SATISFY RULE 9(B)'S HEIGHTENED PLEADING REQUIREMENTS.................................................. 16

     **1.** Rule 9(b) Applies to Plaintiff's CLRA and UCL Claims. ............................... 16

     **2.** Plaintiff Fails to Adequately Plead Tesla's Pre-sale Knowledge of the Alleged Defect 16

     **3.** Plaintiff Fails to Adequately Plead Reliance................................................ 17

   **E.** PLAINTIFF'S CLAIMS UNDER UCL FAIL TO SATISFY RULE 9(B)'S HEIGHTENED PLEADING REQUIREMENTS.................................................. 18

   **F.** PLAINTIFF FAILED TO STATE A CLAIM FOR BREACH OF EXPRESS WARRANTY. ...................................................................................................... 19

   **G.** PLAINTIFF FAILED TO STATE A CLAIM FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY. .......................................................... 21

**IV.** **CONCLUSION** ..................................................................................................... 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arevalo v. Bank of America Cor*p.,
    850 F. Supp. 2d 1008 (N.D. Cal. 2011).................................................................................. 10

*Arroyo v. TP-Link USA Corp.*,
    No. 5:14-CV-04999-EJD, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) ............................ 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................. 4

*Brazil v. Dole Food Co., Inc.*,
    935 F. Supp. 2d 947 (N.D. Cal. 2013)................................................................................ 5, 16

*Brown v. Madison Reed, Inc.*,
    No. 21-CV-01233-WHO, 2022 WL 3579883 (N.D. Cal. Aug. 19, 2022)................................ 7

*In re Carrier IQ, Inc.*,
    78 F. Supp.3d 1051 (N.D. Cal. 2015)................................................................................. 8, 9

*Chacanaca v. Quaker Oats Co.*,
    752 F.Supp.2d 1111 (N.D. Cal. 2010)................................................................................... 18

*Cholakyan v. Mercedes-Benz USA, LLC*,
    796 F. Supp. 2d 1220 (C.D. Cal. 2011)................................................................................. 23

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ................................................................................................................... 9

*Clark v. Am. Honda Motor Co.*,
    528 F. Supp. 3d 1108 (C.D. Cal. 2021)................................................................................. 21

*Collins v. eMachines, Inc.*,
    202 Cal. App.4th 249, 134 Cal. Rptr.3d 588 (Dec. 28, 2011)......................................... 16, 19

*Consumer Advocates v. Echostar Satellite Corp.*,
    113 Cal.App.4th 1351 (2003) ................................................................................................ 18

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

*Corcoran v. CVS Health Corp.*,

    169 F. Supp. 3d 970 (N.D. Cal. 2016)................................................................8

*Corcoran v. CVS Health Corp.*,

    *No. 15-CV-35054 YGR, 2016 WL 4080124 N.D. Cal., July 1, 2016*).....................9

*Darisse v. Nest Labs, Inc.*,

    5:14-CV-01363-BLF, 2016 WL 4385849 (N.D. Cal., Aug. 15, 2016)......................13, 14, 15

*Davison v. Kia Motors America*,

    No. SACV 15-00239-CJC, 2015 WL 3970502 (C.D. Cal., June 29, 2015)...........................15

*Doe v. Epic Games, Inc.*,

    435 F. Supp. 3d 1024 (N.D. Cal. 2020).............................................................17, 18

*Eiess v. USAA Federal Savs. Bank*,

    404 F. Supp. 3d 1240 (N.D. Ca. 2019)......................................................................5

*Fenerjian v. Nongshim Co., Ltd.*,

    72 F. Supp.3d 1058 (N.D. Cal. 2014)......................................................................8

*Fleck and Assoc., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*,

    471 F.3d 1100 (9th Cir. 2006)......................................................................8

*Frenzel v. AliphCom*,

    76 F. Supp. 3d 999 (N.D. Cal. 2014)......................................................................8, 15

*Frezza v. Google Inc.*,

    No. 5:12-CV-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013).................1, 7, 13

*In re Gen. Motors Corp. Dex-Cool Products Liability Litig.*,

    241 F.R.D. 305 (S.D. Ill. 2007)......................................................................14

*Gianino v. Alacer Corp.*,

    846 F.Supp.2d 1096 (C.D. Cal. 2012)......................................................................13

*In re Grand Theft Auto Video Game Consumer Litig.*,

    251 F.R.D. 139 (S.D.N.Y. 2008)......................................................................14

*Granfield v. NVIDIA Corp.*,

    No. 11–cv–05403–JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012).....................8

*Hambrecht & Quist Venutre Partners v. American Medical Internat., Inc.*,
   38 Cal. App. 4th 1532, 46 Cal. Rptr.2d 33 (1995) ................................................ 6

*Harris v. CVS Pharmacy, Inc.*,
   ED CV 13-02329-AB. 2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) ....................... 8

*Hindsman v. Gen. Motors LLC*,
   No. 17-CV-05337-JSC, 2018 WL 2463113 (N.D. Cal. June 1, 2018)...................... 9

*In re Hitachi Television Optical Block Cases*,
   No. 08-cv-1746, 2011 WL 9403 (S.D. Cal. Jan.3, 2011)................................. 13, 14

*Johnson v. Nissan N. Am., Inc.*,
   272 F. Supp. 3d 1168 (N.D. Cal. 2017)................................................................ 9

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................ 2, 5, 16, 18

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ................................................................................... 4

*Kowalsky v. Hewlett-Packard Co.*,
   No. 5:10–cv–02176–LHK, 2012 WL 892427 (N.D. Cal. March 14, 2012) ........... 15

*In re LDK Solar Securities Litigation*,
   584 F. Supp.2d 1230 (N.D. Cal. 2008)........................................................ 11, 12

*Lee v. State of Oregon*,
   107 F.3d 1382 (9th Cir.1997)...................................................................... 8

*Littlehale v. Hain Celestial Grp., Inc.*,
   No. 11–cv–06342–PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012)................... 7

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................. 2, 10

*MacDonald v. Ford Motor Co.*,
   37 F. Supp. 3d 1087 (N.D. Cal. 2014).................................................... 17, 18

*Marolda v. Symantec Corp.*,
   672 F.Supp.2d 992 (N.D. Cal. 2009)................................................................ 18

1   *Mazza v. American Honda Motor Co. Inc.*,

2       666 F.3d 581 (9th Cir. 2012) ..................................................................................*passim*

3   *McCabe v. Am. Honda Motor Co.*,

4       100 Cal. App. 4th 1111 (2002) ........................................................................... 20

5   *Neu v. Terminix International Inc.*,

6       2008 WL 2951390 (N.D. Cal. July 24, 2008) ....................................................... 18

7   *Neubronner v. Milken*,

8       6 F.3d 666 (9th Cir. 1993) ...................................................................................... 5

9   *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC*,

10      31 F.4th 651 (9th Cir. 2022) ..................................................................................... 2

11  *Paduano v. American Honda Motor Co., Inc.*,

12      169 Cal.App.4th at 1468–73 (2009) ................................................................... 18

13  *Raynaldo v. Am. Honda Motor Co.*,

14      No. 21-CV-05808-HSG, 2022 WL 4358096 (N.D. Cal. Sept. 20, 2022) ............... 21

15  *Safe Air for Everyone v. Meyer*,

16      373 F.3d 1035 (9th Cir. 2004) .............................................................................. 4, 5

17  *Salameh v. Tarsadia Hotel*,

18      726 F.3d 1124 (9th Cir. 2013) .......................................................................... 16, 17

19  *Sater v. Chrysler Grp. LLC*,

20      No. EDCV 14-00700 VAP, 2015 WL 736273 (C.D. Cal. Feb. 20, 2015) ............... 23

21  *Sateriale v. R.J. Reynolds Tobacco Co.*,

22      697 F.3d 777 (9th Cir. 2012) ................................................................................ 19

23  *Sciacca v. Apple, Inc.*,

24      362 F. Supp. 3d 787 (N.D. Cal. 2019) ............................................................ 17, 18

25  *Sloan v. General Motors LLC*,

26      2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ....................................................... 20

27  *Sloan v. General Motors LLC*,

28      287 F. Supp. 3d 840 (N.D. Cal. 2018) .................................................................. 23

*Sponchiado v. Apple Inc.*,

    No. 18-CV-07533-HSG, 2019 WL 6117482 (N.D. Cal. Nov. 18, 2019) ................................ 8

*Sprewell v. Golden State Warriors*,

    266 F.3d 979 (9th Cir. 2001) ................................................................................................ 4

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*,

    873 F.2d 1221 (9th Cir. 1989) ............................................................................................ 4

*Stockinger v. Toyota Motor Sales USA Inc.*,

    No. LACV-17-00035 VAP, 2017 WL 10574372 (C.D. Cal. July 7, 2017) ............................ 23

*Swartz v. KPMG, LLP*,

    476 F.3d 756 (9th Cir. 2007) ................................................................................ 4, 5, 20

*Swearingen v. Santa Cruz Nat., Inc.*,

    No. 13-CV-04291-SI, 2016 WL 4382544 (N.D. Cal. Aug. 17, 2016) ...................................... 9

*Tabak v. Apple, Inc.*,

    No. 19-CV-02455-JST, 2020 WL 9066153 (N.D. Cal. Jan. 30, 2020) .................................. 21

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,

    308 F.R.D. 630 (N.D. Cal. 2015) ........................................................................................ 7

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,

    534 F. Supp. 3d 1067 (N.D. Cal. 2021)..........................................................................*passim*

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,

    534 F. Supp. 3d at 1086–87 ................................................................................................ 20

*Troup v. Toyota Motor Corp.*,

    545 Fed. Appx. 668 (9th Cir. 2013) ................................................................ 2, 20, 23

*Vess v. CIBA-Geigy Corp. USA*,

    317 F.3d 1097 (9th Cir. 2003) ............................................................................................ 4

*Villanueva v. Am. Honda Motor Co.*,

    No. CV-19-1390 MWF, 2019 WL 8112467 (C.D. Cal. Oct. 10, 2019) .............................. 23

*Vinci v. Hyundai Motor America*,

    No. SA CV 17-0997-DOC, 2018 WL 61368928 (C.D. Cal., Apr. 10, 2018) ............ 13, 14, 15

*Wainwright v. Melaleuca, Inc.*,

    844 F. App'x 958 (9th Cir. 2021) ................................................................. 6

*Williams v. Facebook*,

    384 F. Supp.3d 1043 (N.D. Ca. 2018) ......................................................... 6

*Woo v. American Honda Motor Co.*,

    462 F.Supp.3d 1009 (N.D. Cal. 2020) ............................................... *passim*

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,

    No. LA ML19-02905 JAK, 2022 WL 522484 (C.D. Cal. Feb. 9, 2022) ............................... 22

*Zinser v. Accufix Research Inst., Inc.*,

    253 F.3d 1180 (9th Cir. 2001) .......................................................... 5, 14

**Statutes**

Cal. Bus. & Prof. Code § 17200 .................................................................. 1, 3

Cal. Civ. Code § 1750. ............................................................................ 1, 3

Cal. Civ. Code § 1791.1(a) ........................................................................ 22

Cal. Civ. Code § 1792 ............................................................................. 21

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................... *passim*

Fed. R. Civ. P. 12(b)(1) ............................................................................ 4

Fed. R. Civ. P. 12(b)(6) ........................................................................ 4, 5

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION AND SUMMARY OF RELIEF SOUGHT.**

3    Plaintiff John Urban ("Plaintiff") sued Defendant Tesla Inc. ("Defendant" or "Tesla")

4    seeking to represent a putative nationwide class. Plaintiff, a Florida resident, alleges consumer

5    protection and breach of warranty claims under California law only, based upon the vague

6    allegation Tesla knew of a purported defect in the design of door handles on model year 2014-2016

7    Model S sedans (the "Vehicle"), but failed to disclose and/or fraudulently concealed the issue from

8    consumers.  Plaintiff's Class Action Complaint ("Complaint") asserts four counts for: (1) violations

9    of Cal. Civ. Code Sections 1750 *et seq.* ("Consumer Legal Remedies Act" or "CLRA"); (2)

10   violations of Cal. Bus. Code Sections 17200 *et seq.* ("Unfair Competition Law" or "UCL"); (3)

11   breach of express warranty under California law; and (4) breach of the implied warranty of

12   merchantability under California law.  As demonstrated below, none of Plaintiff's claims are

13   supportable and each should be dismissed with prejudice because an amendment cannot cure the

14   standing defects nor can a single state's resident ever represent a nationwide class asserting

15   consumer fraud and breach of warranty claims.

16   **A. PLAINTIFF LACKS STANDING.**

17   Plaintiff's Complaint fails for multiple reasons.  First, Plaintiff's claims suffer from

18   numerous standing issues—each of which is fatal. Plaintiff (a Florida resident) lacks standing to

19   assert claims under California law because his claims are governed by Florida law, both through an

20   enforceable forum selection clause in his purchase agreement and in accordance with California's

21   choice of law principles.  *See, e.g., Frezza v. Google Inc.,* No. 5:12-CV-00237-RMW, 2013 WL

22   1736788, at *7 (N.D. Cal. Apr. 22, 2013) (In "[a]pplying California's choice-of-law rules to the

23   facts of this case, the court concludes that the North Carolina plaintiffs' consumer protection claims

24   should be governed by the North Carolina consumer protection laws").

25   Plaintiff also lacks standing to seek injunctive relief because there is no risk of future harm

26   from the conduct he alleges.  *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067,

27   1123 (N.D. Cal. 2021) (holding that plaintiffs lack standing to pursue injunctive relief because they

28   fail to allege that they are likely to purchase another vehicle). And he likewise lacks standing to

1    assert claims for breach of express warranty because (i) he alleges a design defect that is not covered

2    by the warranty, which covers only manufacturing defects, and (ii) his one and only warranty claim

3    was honored by Tesla.  *See Troup v. Toyota Motor Corp.,* 545 Fed. App'x. 668, 668–69 (9th Cir.

4    2013) ("In California, express warranties covering defects in materials and workmanship exclude

5    defects in design"); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992) (party seeking review

6    must be among the injured).

7            **B.      PLAINTIFF CANNOT REPRESENT A NATIONWIDE CLASS.**

8            To the extent that Plaintiff's claims are even cognizable, they also fail because the laws of

9    a single state do not stretch to cover a nationwide putative class. It is well-settled that a resident of

10   a single state cannot represent a putative nationwide class asserting consumer protection and

11   warranty claims because each class member's claims will be subject to the laws of their home state.

12   *See Mazza v. Am. Honda Motor Co. Inc.,* 666 F.3d 581, 594 (9th Cir. 2012) overruled other grounds,

13   *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC,* 31 F.4th 651 (9th Cir. 2022).

14   This District has previously held that because such a putative class can never be certified, dismissal

15   at this juncture is warranted.  *See Woo v. Am. Honda Motor Co.*, 462 F. Supp. 3d 1009, 1023-24

16   (N.D. Cal. 2020) (applying *Mazza* to dismiss nationwide class claims under California law that

17   Honda failed to disclose display screen defects in its cars).

18           **C.      PLAINTIFF'S COMPLAINT FAILS TO ADEQUATELY STATE CLAIMS**

19   **UNDER RULES 9(B) AND 12(B)6.**

20           Moreover, even if Plaintiff could somehow get past his fatal threshold issues, his Complaint

21   still fails to adequately state claims for relief.  He is required to plead his consumer protection

22   claims with specificity under Rule 9(b), and his conclusory allegations fall far short as he fails to

23   identify basic facts, such as when Tesla allegedly knew about the purported defect, what marketing

24   materials he reviewed and when, and which specific statements he relied upon.  *See Kearns v. Ford*

25   *Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) applies to CLRA and UCL

26   claims). Moreover, his breach of express warranty claim fails because he describes a design defect,

27   which is not covered by the warranty; plus, he alleges that Tesla actually repaired his door handle

28   when it malfunctioned during the warranty period.  Finally, he cannot state a claim for breach of

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

the implied warranty of merchantability because it only applies to purchases made in California and his purchase was made in Florida.  *See Woo* 462 F. Supp. 3d at 1019 (dismissing Plaintiff's claim for breach of implied warranty under California law because he had not purchased his vehicle in California).  Furthermore, a mere inconvenience, such as a broken door handle, does not render a vehicle unmerchantable*. See, e.g., In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1093–94 (Plaintiffs' complaints about a too-small fuel tank do not raise a serious question of the Vehicles' fitness for reasonably safe and reliable transportation).

For all these reasons, the Court should dismiss Plaintiff's claims, and should do so with prejudice because the standing defects cannot be remedied and there is no scenario by which he can represent a nationwide class.  *See, Romero v. Countrywide Bank, N.A*., 740 F. Supp. 2d 1129, 1135 (N.D. Cal. 2010) (citing *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996)) ("When amendment would be futile, dismissal may be ordered with prejudice.").

## II.   SUMMARY OF PLAINTIFF'S KEY ALLEGATIONS.

Plaintiff alleges he is a citizen of Florida. (Compl., ¶ 8). In 2015, he purchased a Model S vehicle from Tesla, and now alleges (i) the door handles are defective, (ii) Tesla knew they were defective but concealed this fact from him, and (iii) he suffered economic injury as a result because he would not have purchased the vehicle had he known of the alleged issue or would have paid less for the car.  (Compl., ¶¶ 37, 41, 42, 45, 46).  Plaintiff seeks to represent a putative nationwide class based on consumer protection claims arising under California Civil Code Sections 1750 *et seq.* (hereafter, the "Consumers Legal Remedies Act" or "CLRA") and California Business and Professions Code Sections 17200 et seq. (referred to as the "UCL").  (Compl., ¶¶ 64-84).  He also alleges breaches of express warranty and the implied warranty of merchantability, also both arising under California law.  (Compl., ¶¶ 85-104).

Importantly, Plaintiff fails to allege certain critically important details, such as a description of the marketing materials he reviewed, if any, prior to buying the car, a description of the alleged defect beyond his allegation that the door handles prematurely fail, when he first discovered the alleged defect, how Tesla's repair of his broken door handle during the warranty period constitutes a breach of express warranty, or how the inconvenience of a single door handle failing to present

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

1    constitutes a safety risk on a four door vehicle.

2    **III.    ARGUMENT AND AUTHORITIES.**

3        **A.    LEGAL STANDARD.**

4        Dismissal under Rule 12(b)(1) is appropriate where the court lacks subject matter

5    jurisdiction because "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life*

6    *Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also* Fed. R. Civ. P. 12(b)(1).  As such, federal courts

7    are presumed to lack jurisdiction in a particular case "unless the contrary affirmatively appears."

8    *Stock West, Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989).

9    In deciding a Rule 12(b)(1) motion challenging subject matter jurisdiction, the burden of proof is

10   on the party asserting jurisdiction, and the court will presume a lack of jurisdiction until the pleader

11   proves otherwise. *See Kokkonen*, 511 U.S. at 377.  Moreover, the court may consider extrinsic

12   evidence "without converting the motion to dismiss into a motion for summary judgment."  *Safe*

13   *Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004); *cf. Swartz v. KPMG, LLP*, 476

14   F.3d 756, 763 (9th Cir. 2007) (in ruling on a Rule 12(b)(6) motion, the "court may consider a writing

15   referenced in the complaint but not explicitly incorporated therein if the complaint relies on the

16   document and its authenticity is unquestioned.").

17       With regard to a Rule 12(b)(6) motion, the court accepts as true only well-pled material

18   facts and reasonable inferences to be drawn therefrom, but courts do not accept as true conclusory

19   allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State*

20   *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

21   550, 557, 570 (2007).  ("naked assertion[s] . . . without some further factual enhancement" are

22   insufficient)

23

24       Further, where, as here, claims sound in fraud, a complaint must "state with particularity

25   the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). "Averments of fraud

26   must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*

27   *v. CIBA-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). To satisfy Rule 9(b), "[t]he

28   complaint must specify such facts as the times, dates, places, benefits received, and other details of

the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Rule 9(b) applies not only to claims formally denominated as fraud, but to all claims grounded in fraud, including the two California consumer protection statutes invoked by Plaintiff. *See Kearns*, 567 F.3d at 1125; *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 963 (N.D. Cal. 2013).

### B.   PLAINTIFF LACKS STANDING TO ASSERT CALIFORNIA CLAIMS.

Plaintiff is and was "at all times relevant to this action," a Florida resident (Compl. ¶ 8), who purchased his car in Florida, and agreed that Florida law would govern the transaction; regardless of whether this Court enforces the parties' contractual choice of law or examines California choice of law principles, Plaintiff's claims are inescapably governed by Florida law and Plaintiff lacks standing to assert claims under California law.

### 1.   The Parties' Agreement to Apply Florida Law is Enforceable.

The purchase agreement between Plaintiff and Tesla includes the following choice of law provision that binds the parties to Florida law:

> The terms of this Agreement are governed by, and to be interpreted according to, the laws of the State in which we are licensed to sell motor vehicles that is nearest to your address indicated on your Vehicle Configuration.

(See Motor Vehicle Purchase Agreement ("MVPA"), attached hereto as **Exh. 1**).

At the time of the sale, Tesla was licensed to sell in Florida, where Plaintiff resided. (See Declarations of Toletti and Franzella; MVPA at **Exh. 1**; Dealer Licenses, attached hereto as **Exh. 2**).[1] Thus, the parties agreed Florida law governs—and that choice is enforceable under California law.

Where, as here, the Plaintiff invokes the Court's subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), the forum state's law applies in determining choice-of-law questions. *See Zinser v. Accufix Rsch. Inst., Inc.,* 253 F.3d 1180, 1187 (9th Cir. 2001); *Eiess v. USAA Fed. Savs. Bank,* 404 F. Supp. 3d 1240, 1249 (N.D. Ca. 2019).   Under California law, "the enforceability of arm's-length contractual choice-of-law provisions [are determined by] the

---

[1] When determining a challenge to jurisdiction, the court may consider extrinsic evidence without converting the motion to a summary judgment. *Safe Air for Everyone*, 373 F.3d at 1039; *cf. Swartz*, 476 F.3d at 763 (in ruling on a Rule 12(b)(6) motion, the "court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.").

principles set forth in Restatement section 187, which reflect a strong policy favoring enforcement of such provisions." *Wainwright v. Melaleuca, Inc.,* 844 F. App'x 958, 960 (9th Cir. 2021) (citing *Nedlloyd Lines B.V. v. Superior Ct.,* 3 Cal. 4th 459, 464–65, 11 Cal. Rptr. 2d 330, 834 P.2d 1148 (1992)).

In employing these principles, "[c]ourts apply a two-pronged . . . test:  '(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law.'" *Williams v. Facebook*, 384 F. Supp. 3d 1043, 1056 (N.D. Ca. 2018) (*quoting Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 916, 103 Cal. Rptr. 2d 320, 15 P.3d 1071 (2001)).  "If either prong is met, the choice of law will be enforced unless contrary to a fundamental policy of the alternative state . . . ***and*** if the state has a materially greater interest in the determination of the particular issue."  *Id.* (internal quote and citation omitted) (emphasis added).

Here, the first prong is easily satisfied.  Florida has a substantial relationship to Plaintiff because he resides there.  It likewise has a substantial relationship to the transaction because it involves a Florida resident's purchase of a vehicle from a seller licensed by Florida, with delivery in Florida.  *See, e.g., Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc*., 38 Cal. App. 4th 1532, 1546-47, 46 Cal. Rptr. 2d 33, 41-42 (1995) (substantial relationship exists when at least one party to the contract resides in the chosen forum).

Because the first prong of the test is easily satisfied, the choice of law provision is enforceable unless Florida law is contrary to a fundamental policy of California and California has a materially greater interest.  *Williams*, 384 F. Supp. 3d at 1056.  The Court need not undergo a comparison of Florida law to the fundamental policies of California because it is well-settled that California does not have a materially greater interest in protecting a Florida resident.  Indeed, "California's interest in applying its law to residents of foreign states is attenuated." *Mazza*, 666 F.3d at 594.  California expressly recognizes the wrongs alleged to have occurred in the instant action took place in Florida, where Plaintiff purportedly relied on Tesla's alleged misrepresentations and paid to have his door handles repaired. *See id.* at 593.  Thus, Florida has "a strong interest in the application of [its] laws to transactions between [its] citizens and corporations

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

doing business within" its borders.  *Id.* at 594.  Accordingly, the choice of law provision in favor of Florida is enforceable and governs Plaintiff's claims.

## 2.   Alternatively, Florida Law Applies Under Choice of Law Principles, Because it is Where the Transaction Took Place

Moreover, even in the absence of the choice of law provision, Florida law would still govern under choice of law principles because the transaction took place in Florida, Plaintiff resides in Florida, and Plaintiff took possession of the vehicle in Florida from Tesla at 100 S. Lake Destiny Dr., Orlando, FL 32810.  (See **Declarations and Exhs. 1 & 2**).  Claims brought against automobile sellers by purchasers alleging they were injured by false and/or misleading advertising regarding the vehicle features are, in the absence of a contractual choice of law provision, "governed by the consumer protection laws of the jurisdiction" in which the consumer received and relied on those misrepresentations by purchasing the automobile.  *See Mazza*, 666 F.3d at 594; *see also Brown v. Madison Reed, Inc.,* No. 21-CV-01233-WHO, 2022 WL 3579883, at *7 (N.D. Cal. Aug. 19, 2022) (Ohio law applied because the plaintiff viewed the commercial and visited the company's website in Ohio and relied on those statements in purchasing products in Ohio); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 637-38 (N.D. Cal. 2015) (the place of the wrong has the controlling interest in applying its laws, which is the place where the purchaser resides); *Frezza,* 2013 WL 1736788, at *7 (In "[a]pplying California's choice-of-law rules to the facts of this case, the court concludes that the North Carolina plaintiffs' consumer protection claims should be governed by the North Carolina consumer protection laws"); *Littlehale v. Hain Celestial Grp., Inc.,* No. 11–cv–06342–PJH, 2012 WL 5458400, at *1–2 (N.D. Cal. July 2, 2012) (Plaintiffs claims under consumer protection laws should be governed by Pennsylvania law for transactions that took place in Pennsylvania).

## 3.   Plaintiff Lacks Standing to Bring Claims Under California Law, so the Court Must Dismiss for Lack of Jurisdiction.

Although Plaintiff is a Florida resident whose claims are governed by Florida law, he nevertheless filed suit in California, alleging claims exclusively under California law.  But because Florida law applies, Plaintiff lacks standing to assert claims under California law.  It is well-settled

that a named Plaintiff does not have standing to assert claims arising under the laws of a state in which he neither resides nor purchased the product at issue.  *See, e.g., Corcoran v. CVS Health Corp.,* 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016) (noting that courts routinely dismiss claims where the named plaintiff seeks to enforce laws of another state) (citing *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.,* No. 09-MDL-2007, 2009 WL 9502003, at *6 (C.D. Cal. July 6, 2009) (same)); *In re Carrier IQ, Inc.,* 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015) (holding that named plaintiffs lack standing to assert claims from states in which they neither reside nor purchased the product); *Harris v. CVS Pharmacy, Inc*., No. ED CV 13-02329-AB. 2015 WL 4694047, at *5 (C.D. Cal. Aug. 6, 2015) (California resident who purchased goods in California lacked standing to assert claims under Rhode Island law); *Fenerjian v. Nongshim Co., Ltd*., 72 F. Supp. 3d 1058, 1082-83 (N.D. Cal. 2014) (finding plaintiff lacked standing to assert a claim under the consumer protection laws of other states); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014) (dismissing Plaintiff's California law claims when he conceded he did not purchase the goods in California); *Granfield v. NVIDIA Corp.,* No. 11–cv–05403–JW, 2012 WL 2847575, at *3 (N.D. Cal. July 11, 2012) (Plaintiff does not have standing to assert claims under the laws of any states other than Massachusetts where the purchase was made).

Standing is a critical aspect of subject matter jurisdiction, and as such, where a Plaintiff lacks standing, the Court must dismiss the case.  *See Fleck and Assoc., Inc. v. Phoenix*, *City of, an Arizona Mun. Corp*., 471 F.3d 1100, 1106 n.4 (9th Cir. 2006).  This is true at the Motion to Dismiss stage even for a putative class action claim "[b]ecause a plaintiff's standing to bring suit is a fundamental aspect of a district court's subject matter jurisdiction." *Harris*, 2015 WL 4694047, at *4.  Thus, a "district court may (and generally should) 'address[] the issue of standing before it addresse[s] the issue of class certification.'" *Id*. (*quoting Easter v. Am. West Fin.,* 381 F.3d 948, 962 (9th Cir. 2004).  "Standing is a jurisdictional element that must be satisfied prior to class certification." *Lee v. State of Oregon*, 107 F.3d 1382, 1390 (9th Cir.1997) (citation and internal quotation marks omitted).

Accordingly, the Court should dismiss Plaintiff's claims for lack of subject matter jurisdiction. *See Sponchiado v. Apple Inc.,* No. 18-CV-07533-HSG, 2019 WL 6117482, at *7 (N.D.

Cal. Nov. 18, 2019); *Hindsman v. Gen. Motors LLC,* No. 17-CV-05337-JSC, 2018 WL 2463113, at *15 (N.D. Cal. June 1, 2018); *Johnson v. Nissan N. Am., Inc.,* 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017); *Corcoran v. CVS Health Corp.*, No. 15-CV-35054 YGR, 2016 WL 4080124, at *2 (N.D. Cal., July 1, 2016); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1069.

### 4.    Plaintiff Also Lacks Standing to Seek Injunctive Relief

Plaintiff is also without standing to seek the injunctive relief he has requested because there is no threat that he will be harmed in the future by Tesla's alleged failure to disclose something about which Plaintiff—and the public—is now aware.   To have standing to obtain injunctive relief, a plaintiff must allege a "real or immediate threat" exists that he will be wronged again. *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 111 (1983) (holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects").   Here, the purported wrong was a failure to disclose in the past, and there is no allegation—nor could there be—that Plaintiff is at risk of suffering harm again by the same alleged conduct.    In fact, Plaintiff alleges that Tesla has redesigned the door handle which he claims is the source of the harm, and that it is now "far more reliable."  (Compl. at ¶ 48).

Plaintiff has not alleged he intends to purchase the same allegedly defective products at issue (i.e., 2014-2016 Model S) in the future, and therefore lacks standing to seek injunctive relief. *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1123 (Plaintiffs do not presently have Article III standing to pursue injunctive relief because they fail to allege that they are likely to purchase another vehicle); *Swearingen v. Santa Cruz Nat., Inc.,* No. 13-CV-04291-SI, 2016 WL 4382544, at *13 (N.D. Cal. Aug. 17, 2016) (Plaintiffs lack standing by their allegation that they would not have purchased the food products had they known they contained sugar and the Court "has difficulty envisioning how plaintiffs could amend their complaint to allege plausibly" they will purchase the products in the future).

### 5.    Plaintiff Lacks Standing to Assert Claims for Breach of Express Warranty.

Plaintiff also seeks to represent a class of "[a]ll owners and lessees of Defendant's model

1   year 2014-2016 Model S Vehicles purchased or leased in the United States."  In support of that

2   claim, he alleges he experienced a malfunctioning door handle on the passenger side rear door

3   during the manufacturer warranty period and that Tesla repaired the door handle at its expense

4   under the warranty. (Compl. ¶ 31).  He further alleges that the front passenger door handle and the

5   front driver side door both malfunctioned after the warranty period expired.  (Compl. ¶¶ 32-33).

6        Plaintiff has no standing to assert a breach of express warranty for three important reasons.

7   First, he claims the door handles are defectively designed, but the warranty covers only

8   manufacturing defects.  (*See infra* Section III.F).   Second, Plaintiff admits Tesla repaired the one

9   and only door handle malfunction that occurred during the warranty period.  Thus, he has suffered

10  no injury, and without an injury, Plaintiff has no standing.  *See, e.g., Lujan*, 504 U.S. at 563 (party

11  seeking review must be among the injured).

12       Finally, to the extent Plaintiff seeks to represent putative class members who were

13  purportedly injured by Tesla's alleged refusal to repair a malfunctioning door handle during the

14  warranty period (Compl. ¶ 90), plaintiff has no standing because he did not suffer the same injury.

15  "Named plaintiffs in a class action 'must allege and show that they personally have been injured,

16  not that the injury has been suffered by other, unidentified members of the class to which they

17  belong and which they purport to represent.'"  *Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008,

18  1016 (N.D. Cal. 2011) (*quoting Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

19       **C.    PLAINTIFF'S PUTATIVE CLASS CAN NEVER BE CERTIFIED, SO THE**

20       **COURT SHOULD DISMISS THE CLAIMS NOW.**

21            **1.    Plaintiff Has Failed to Show that California Has Significant Contacts**

22            **With the Claims of the Class Members.**

23       Plaintiff's putative class claims are also irrevocably flawed, both because he has not

24  demonstrated California has the requisite significant contacts to each class member; and moreover,

25  the forum selection clause in each consumer's contract would govern.  "Under California's choice

26  of law rules, the class action proponent bears the initial burden to show that California has

27  "significant contact or significant aggregation of contacts' to the claims of each class member."

28  *Mazza*, 666 F.3d at 589 (internal quotation marks omitted).  Then, only if the plaintiff makes this

showing, does the burden shift to defendant to demonstrate that other law(s) should apply to class claims.  *Id*.  Here, Plaintiff has not met this initial burden, and even if he had, the laws of the states where each putative class member resides would apply.  *Id*. at 594.

As discussed *supra*, each sale transaction is governed by a written agreement that contains a forum selection clause in favor of the state nearest to the consumer's residence in which Tesla is licensed to sell vehicles.  In the relevant time period (i.e., when Tesla sold 2014 to 2016 Model S vehicles), Tesla was licensed in at least 10 states.  (See dealer licenses, attached hereto as **Exh. 2** and Declarations of Toletti and Franzella).[2]  Moreover, even California recognizes that a consumer is harmed, not by the publication of a false or misleading advertisement, but by receiving it and relying upon it.  *See Mazza*, 666 F.3d at 593-94.  Thus, the states with the most significant aggregation of contacts to the claims of the class members are either (i) the 10 states in which Tesla was licensed at the time, or (ii) the class members' home states if the choice of law provision is not enforceable.  But California law will not apply (except for California residents, if any).

> **2.**     **The Laws of the Class Members' Home States Will Govern Each Class Member's Claims Under California's Governmental Interest Test.**

Even assuming *arguendo* Plaintiff can meet his burden (which he cannot, even with an amended complaint), Tesla can still demonstrate California law may not be applied on a class-wide basis for two unassailable reasons.  First, the forum selection clauses are enforceable, so the laws of the various states will apply in lieu of California.[3]  Second, in the unlikely event one or more of the particular forum selection clauses is not enforceable—which itself presents an individualized question that militates against class certification—it is well-settled that California law may not be applied to a nationwide class because the interests of the class members' home states outweigh California's interest in having its law applied.  *Id*. at 590.  This holding comes from *Mazza*, a case that is indistinguishable from the case at bar.

---

[2] The "court may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment."  *In re LDK Solar Secs. Litig.*, 584 F. Supp. 2d 1230, 1254 (N.D. Cal. 2008).  The dealer licenses are issued by governmental entities and are therefore matters of public record.

[3] *See supra* section III.B.1.

11

1         In *Mazza*, the Ninth Circuit reversed the district court's certification of a nationwide class

2   of consumers who purchased or leased Acura RLs equipped with a high-tech braking system where

3   plaintiffs alleged that Honda had misrepresented the characteristics of the braking system and

4   omitted material information on its limitations. *Id*. at 585. The district court certified a nationwide

5   class, concluding that California law applied to all class members. *Id*. at 588.

6         The Ninth Circuit reversed, concluding California law could not be applied to a nationwide

7   class because the home states of each of the class members had a greater interest in governing the

8   transaction involving a citizen of its own state, than California did in having its law applied to the

9   class as a whole. *Id*. at 594. The *Mazza* court reached this conclusion by applying California's

10  three-step governmental interest test requiring the court to examine: (1) whether the relevant law

11  of each affected jurisdiction is the same or different; (2) if there is a difference, whether a true

12  conflict exists between the jurisdictions such that each jurisdiction has an interest in seeing its own

13  law applied; and (3) which state's interest would be more impaired if subordinated to another state's

14  law, if such a true conflict exists. *Id*. at 590. Here, just as in *Mazza*, California's governmental

15  interest test demands dismissal.

16                   *a. Step-One: The Laws of 50 States are Materially Different*

17        Specifically, as to the first step, the various laws of the affected jurisdictions are materially

18  different, a conclusion this court may draw from its own analysis by referring to the summary charts

19  attached hereto as **Exhibit 3**. Even a cursory analysis demonstrates each of the 50 states have wide

20  variances in their consumer protection statutes. The statutes of limitation are different,[4] some states

21  require scienter whereas others do not,[5] some, but not all, require reliance,[6] and the available

22  remedies vary greatly, with 10 states allowing for injunctive relief,[7] 11 permitting punitive

23  damages,[8] 12 providing for treble damages,[9] and 26 including attorneys' fees.[10] And the lack of

24

25

---

26  [4] *See* **Exh. 3** at 1.
    [5] *Id.*

27  [6] *Id.*
    [7] *Id.*

28  [8] *Id.*
    [9] *Id.*
    [10] *Id.*

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

uniformity as to which states share which elements exponentially compounds the number of differences among the states' consumer protection laws.

In order to aid in its analysis, this Court may also rely on the same comparative analysis undertaken by multiple other courts in this circuit and elsewhere—each of which has reached the inescapable conclusion that material, irreconcilable differences exist among the states' consumer protection statutes.  *See, e.g., Mazza,* 666 F.3d at 591 (noting material differences among the states with respect to reliance, scienter, and remedies); *Frezza v. Google,* No. 5:12-cv-00237-RMW, 2013 WL 1736788, at *6 (N.D. Cal., Apr. 22, 2013) (noting material differences between California and North Carolina law); *Gianino v. Alacer Corp.,* 846 F. Supp. 2d 1096, 1101-02 (C.D. Cal. 2012) (noting material differences among the states with respect to scienter, reliance, pre-suit notice, limitations, class action waiver, and remedies); *In re Hitachi Television Optical Block Cases,* No. 08-cv-1746, 2011 WL 9403, at *6 (S.D. Cal. Jan.3, 2011) ("[T]here are material conflicts between California's consumer protection laws and the consumer protection laws of the other forty-nine states.").

Similarly, there are material differences in how states treat breach of warranty claims.[11]  For breach of express warranty, 24 states require pre-suit notice while two do not,[12] and 12 states require reliance whereas 16 do not.[13] Regarding the implied warranty of merchantability, 23 require privity and 27 do not;[14] 41 require pre-suit notice whereas 9 do not;[15] and there are material differences regarding the availability of class actions. And just as with the analysis regarding the state's consumer protection laws, there is no consistency among the states as to each individual element of a breach of warranty claim—again exponentially multiplying the differences among the states. Multiple courts have reached the same conclusion.  *See, e.g. Vinci v. Hyundai Motor Am.*, No. SA CV 17-0997-DOC, 2018 WL 6136828, at *8 (C.D. Cal., Apr. 10, 2018) ("Defendant has met its burden to show material differences in . . . warranty laws . . . between California and the other forty-nine states); *Darisse v. Nest Labs, Inc*., No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *11 (N.D.

---

[11] *See id.* at 32 *et seq.*
[12] *Id.* at 32.
[13] *Id.*
[14] *Id.* at 41-50.
[15] *Id.*

Cal., Aug. 15, 2016) (finding material differences in both express and implied warranty claims among the states); *In re Hitachi*, 2011 WL 9403, at *6 ("[T]here are material conflicts between California warranty law and the warranty law of the other forty-nine states"); *In re Gen. Motors Corp. Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 319-21 (S.D. Ill. 2007) (finding material differences in reliance element of different states' express warranty laws); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 161 (S.D.N.Y. 2008) (material differences in privity requirement).

### b. *Step Two: A True Conflict Exists.*

Regarding the second prong of the three-part governmental interest test, a true conflict exists because "[E]very state has an interest in having its law applied to its resident claimants." *Zinser*, 253 F.3d at 1187. Even "California law [] acknowledges that a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders." *Mazza*, 666 F.3d at 592 (quotations and citations omitted). Thus, each of the states in which the consumers reside "has a strong interest in applying its own consumer protection laws . . . ." *Id.*; *see also Vinci* 2018 WL 6136828, at *10 (concluding that each state has an interest in applying its own consumer protection and warranty laws); *Darisse*, 2016 WL 4385849, at *11 (same).

### c. *Step Three: Each Home State's Interest would be Impaired by Applying California's Law.*

Finally, the last prong of the governmental interest test weighs in favor of applying the laws of the states where the transaction took place. This factor is not determined by a comparison of which state's law is better or more worthy, but is instead an exercise in protecting the basic concept of federalism. *Mazza* at 593. As the *Mazza* court noted:

> A key purpose of [CAFA] was to correct what former Acting Solicitor General Walter Dellinger labeled a waive of "false federalism." "[T]he problem is that many state courts faced with interstate class actions have undertaken to dictate the substantive laws of other states by applying their own laws to other states, resulting in a breach of federalism principles." Accordingly, "courts should not attempt to apply the laws of one state to behaviors that occurred in other jurisdictions."

1    *Id.* (quoting S. Rep. No. 109-14, at 61, 2005 U.S.C.C.A.N. 3, 57).

2         Because the place of the wrongs to be righted by this lawsuit took place in various states

3    other than California, those foreign jurisdictions have a strong interest in applying their laws to the

4    transactions. *Id.* at 593-94. By contrast, "California's interest in applying its law to residents of

5    foreign states is attenuated." *Id.* at 594. Thus, each of the individual states' interest would be more

6    impaired than California's, and each class member's claim should be governed by the "laws of the

7    jurisdiction in which the transaction took place." *Id.*; *see also Vinci* 2018 WL 6136828, at *10

8    (dismissing a nationwide putative class "[b]ecause of the material differences in state laws, and

9    states' impaired ability to protect consumers within their borders if California law were to apply);

10   *Darisse*, 2016 WL 4385849, at *15 (denying motion for nationwide class certification because each

11   "class member's claims . . . must be governed by the laws of the state in which the transaction took

12   place); *Kowalsky v. Hewlett-Packard Co.*, No. 5:10–cv–02176–LHK, 2012 WL 892427, at *6-8

13   (N.D. Cal. March 14, 2012) (denying motion for nationwide class certification for claims asserted

14   by a New Jersey Plaintiff under California law on grounds that "*Mazza* is materially

15   indistinguishable from this case and is therefore controlling").

16                      **3.      Plaintiff's Claims Should be Dismissed.**

17        Though *Mazza* reversed a district court's certification of a nationwide class, other courts in

18   this Circuit have since relied on *Mazza* to dismiss claims with prejudice because of the futility of

19   permitting a putative nationwide class to proceed to class certification. *See, e.g.*, *Woo*, 462 F. Supp.

20   3d at1023-24 (applying *Mazza* to dismiss nationwide class claims under California law that Honda

21   failed to disclose display screen defects); *Vinci*, 2018 WL 6136828, *10, 5 (applying *Mazza* to

22   dismiss nationwide class claims arising out of alleged auto part defects and collecting cases doing

23   likewise); *Davison v. Kia Motors Am.,* No. SACV 15-00239-CJC, 2015 WL 3970502, at *3 (C.D.

24   Cal., June 29, 2015) (applying *Mazza* to dismiss nationwide class claims under California law

25   where Plaintiff alleged that Kia failed to disclose door lock defects); *Frenzel,* 76 F. Supp. 3d at

26   1007-09 (applying *Mazza* to dismiss nationwide claims asserted under California law).

27        Indeed, this very Court has recognized *Mazza* may be addressed "at the motion to dismiss

28   stage provided adequate analysis may be made without waiting for full fact discovery." *Arroyo v.*

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

*TP-Link USA Corp.*, No. 5:14-CV-04999-EJD, 2015 WL 5698752, at *3 (N.D. Cal. Sept. 29, 2015). This is such a case.  The Court has before it all the information necessary to apply the governmental interest test:   the purchase agreement that contains an enforceable forum selection clause, a summary of the material differences among the laws of the various jurisdictions, and conclusions of other courts holding that each state has a greater interest than California in applying its own laws to consumer protection and warranty claims.  Thus, no amount of discovery can save Plaintiff's claims and the Court should dismiss them now with prejudice.

### D.    PLAINTIFF'S CLAIMS UNDER CLRA ALSO FAIL TO SATISFY RULE 9(B)'S HEIGHTENED PLEADING REQUIREMENTS.

#### 1.    Rule 9(b) Applies to Plaintiff's CLRA and UCL Claims.

Plaintiff alleges that Tesla violated the CLRA by failing to disclose the allegedly defective door handles under circumstances giving rise to a duty of disclosure, which failure Plaintiff claims is actionable fraud under the CLRA.  (Compl., ¶¶ 67-68).  *See, e.g., Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255, 134 Cal. Rptr. 3d 588, 593 (Dec. 28, 2011) (describing when a failure to disclose constitutes actionable fraud).  Fraud-based claims brought under the CLRA (and UCL) must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d at 1125; *Brazil*, 935 F. Supp. 2d 947 at 963. When such claims are premised on misleading advertising or labeling, Rule 9(b) requires a plaintiff to allege "the particular circumstances surrounding [the] representations" at issue, regardless of whether they are affirmative misrepresentations or material omissions.  *Kearns*, 567 F.3d at 1126-27. To satisfy Rule 9(b), the "complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh v. Tarsadia Hotel,* 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1055 (9th Cir. 2011)).

#### 2.    Plaintiff Fails to Adequately Plead Tesla's Pre-sale Knowledge of the Alleged Defect

Under California law, a duty to disclose may arise under four circumstances, all of which necessarily require the defendant's actual knowledge of the fact that was not disclosed.  *See Collins*,

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

202 Cal. App. 4th 249 at 255.  Tesla has no duty to (nor could it possibly) disclose a fact of which it was not aware. "[T]he failure to disclose a fact that a manufacturer does not have a duty to disclose, *i.e.,* a defect of which it is not aware, does not constitute an unfair or fraudulent practice." *Sciacca v. Apple, Inc.,* 362 F. Supp. 3d 787, 799–800 (N.D. Cal. 2019) (quoting *Wilson v. Hewlett-Packard Co.,* 668 F.3d 1136, 1145 n.5 (9th Cir. 2012)). Thus, to state a claim under the CLRA a plaintiff must show not only that a defect existed at the time of sale, but that the defendant knew of the defect and sold the product nonetheless. *MacDonald v. Ford Motor Co.,* 37 F. Supp. 3d 1087, 1092–93 (N.D. Cal. 2014).

Here, Plaintiff fails to adequately plead that the alleged defect existed at the time of the sale or that Tesla knew about it in April 2015.  Instead, Plaintiff makes only the following conclusory allegations:

(1) "Defendant has had knowledge that its Vehicles contain the Defect, and yet continued to market its Vehicles without disclosing the existence of the Defect to consumers." (Compl. ¶ 41).

(2) "Defendant had knowledge that its omissions regarding the safety and performance of the Vehicles were misleading and material to consumers, yet it continually failed to disclose the Defect."  (Compl. ¶ 42).

(3) "Defendant has long known or should have known of the Vehicles' Defect . . ." (Compl. ¶ 45.

None of these statements include any of the specificity required under Rule 9(b) with regard to actual dates or other indicia to indicate that Tesla knew of the allegedly faulty door handles at the time Plaintiff purchased his car in April 2015.  The Complaint does, however, include purported customer complaints about the door handles, but they all significantly post-date April 2015, some by as many as five years.  These allegations fail to include the all-important "when" that is required by Rule 9(b).  *Salameh,* 726 F.3d at 1133.  Indeed, Plaintiff's allegations affirmatively demonstrate Tesla's lack of pre-sale knowledge of any alleged door handle issue.

### 3.    Plaintiff Fails to Adequately Plead Reliance

Importantly, Plaintiff also fails to adequately plead reliance, which is a necessary element of his CLRA claim.  *See Doe v. Epic Games, Inc.,* 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020);

*Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002-03 (N.D. Cal. 2009). Plaintiff alleged he ordered the Vehicle in April 2015 and purchased the Vehicle "because of its high-tech features, including retractable door handles that improved the car's aerodynamics." (Compl., ¶ 29).  He also says that Tesla made representations on its website regarding safety, performance, and efficiency. (Compl., ¶¶ 20-22).   Notably, however, Plaintiff fails entirely to allege when the purportedly misleading claims on the website were published, or that he reviewed or even knew of them prior to purchasing the Vehicle. Plaintiff also fails to allege how he was misled by the website content when making his purchase.  *See Sciacca*, 362 F. Supp. 3d at 798-99 (Plaintiff failed to allege what was false or misleading about the promotional materials on Defendant's website and why it is false); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (Plaintiff failed to specify what ads or materials he relied upon to purchase the vehicle, when he was exposed to them, and who made the statements or when they were made); *Doe,* 435 F. Supp. 3d at 1047 (Plaintiff failed to allege whether he saw the disclosure and how he was misled by it when making purchases).

### E.   PLAINTIFF'S CLAIMS UNDER UCL FAIL TO SATISFY RULE 9(B)'S HEIGHTENED PLEADING REQUIREMENTS.

Plaintiff alleges Tesla violated the UCL: (1) "by omitting the fact that the Vehicles contain the Defect;" and (2) "by failing to inform purchasers and lessees how to respond when the Defect manifests."  (Compl. ¶ 76).  But again, neither theory is plead with the specificity required by Rule 9(b).

The pleading standard for deceptive practices under the fraudulent prong of the UCL is the same required for misrepresentation claims under the CLRA, and courts often analyze the two statutes together. *See MacDonald*, 37 F. Supp. 3d at 1097–98; *Consumer Advocates v. Echostar Satellite Corp.,* 113 Cal. App. 4th 1351, 1360 (2003); *Paduano v. Am. Honda Motor Co., Inc.,* 169 Cal. App. 4th at 1468–73 (2009), (analyzing UCL and CLRA claims together); *Neu v. Terminix Int'l Inc.,* No. C 07-6472, 2008 WL 2951390, at *3–4 (N.D. Cal. July 24, 2008) (analyzing UCL and CLRA claims together); *Chacanaca v. Quaker Oats Co.,* 752 F. Supp. 2d 1111, 1124–27 (N.D. Cal. 2010) (analyzing UCL and CLRA claims together).

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

1   Regarding Plaintiff's first theory of violative conduct, Plaintiff fails to identify the specific

2   misleading advertisements, when they were published, whether he saw them, and how he relied on

3   them. He also fails to identify when the purported defect manifested and when Tesla obtained actual

4   knowledge of the issue.  These are all fatal to his claims.  Not only is Plaintiff required to prove the

5   aforementioned facts, he is required to go a step further: a plaintiff is also "required to prove 'actual

6   reliance on the allegedly deceptive or misleading statements,' and that 'the misrepresentation was

7   an immediate cause of the injury-producing conduct.'" *Sateriale v. R.J. Reynolds Tobacco Co*., 697

8   F.3d 777, 793 (9th Cir. 2012) (quoting *Kwikset v. Superior Ct.,* 51 Cal. 4th 310, 327 (2011) and *In*

9   *Re Tobacco II Cases,* 46 Cal. 4th 298, 306 (2009)). Here, Plaintiff can't even prove the foundational

10  facts of violative conduct, much less reliance and causation.

11   Plaintiff's second theory of omission fares no better.  The one and only place the theory of

12  omission is even mentioned in the entire Complaint is in paragraph 76, where he alleges "Defendant

13  violated the UCL by . . . failing to inform purchasers and lessees how to respond when the Defect

14  manifests." (Compl. ¶ 76).  There is nothing in the Complaint that even remotely hints at the source

15  of the duty of Defendant to even provide such information or, again, that Defendant even had

16  knowledge of any purported defect that would give rise to such a duty—if it even exists at law. *See*

17  *Collins*, 202 Cal. App. 4th 255 (describing circumstances giving rise to a duty of disclosure).

18   Likewise, there's nothing in the Complaint that describes how or when Tesla breached this

19  hypothetical duty, nor how or when Plaintiff suffered any injury by Tesla's alleged breach.  If

20  anything, Plaintiff alleges he knew exactly what to do when his door handles stopped working as

21  he successfully repaired them, once under a warranty claim. (Compl. ¶¶ 31-33).  Accordingly, the

22  UCL claim should be dismissed.

23   **F.    PLAINTIFF FAILED TO STATE A CLAIM FOR BREACH OF EXPRESS**

24        **WARRANTY.**

25   Other than alleging the door handles stop presenting, Plaintiff never articulates what the

26  alleged defect is, and more to the point, fails to specify whether such purported defect is one of

27  design or manufacturing.  When read as a whole, however, the Complaint can be fairly interpreted

28  as alleging a design defect based on Plaintiff's claim that the door handles have "a high propensity

to stop working as intended,"[16]  and that "the problem was prevalent throughout the Vehicles." (Compl. ¶¶ 27, 35).   And then there's this:

> In a tacit admission of the Defect's significance, Tesla *redesigned* the door handle for its post-2016 Model S vehicles, with the door handle *design* now believed to be in at least its 4th generation.  … Accordingly, the *redesign* is purely a redesign . . . to make it more reliable.  Upon information and belief, the Model S door handle has been made more reliable with each new generation of *redesign* and, now in at least its 4th generation of *redesign*, is far more reliable, with the door handle failure problem now being a relatively rare occurrence.

(Compl. ¶ 48) (emphasis added).  Thus, Plaintiff alleges a design defect, albeit inarticulately.  *See, e.g.*, *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d at 1086–87 (concluding plaintiff alleged a design defect); *McCabe v. Am. Honda Motor Co.*, 100 Cal. App. 4th 1111, 1120 (2002) (design defect "exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective.").

Of course, Plaintiff never specifies he is complaining of an alleged design defect, because that would be fatal to his claim. That is because Tesla's express warranty covers only defects in materials and workmanship.  (See **Exh. 4**).[17]  It is well-settled these types of warranties *do not* cover design defects.  *See In re Toyota RAV4 Hybrid Fuel Tank Litig.,* 534 F. Supp. 3d at 1086–87 (express warranties covering materials and workmanship do not cover design defects); *Woo*, 462 F. Supp. 3d at 1016–17 (same); *Troup v. Toyota Motor Corp.,* 545 Fed. App'x. at 668–69 (noting, "[i]n California, express warranties covering defects in materials and workmanship exclude defects in design"); *Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) (stating that "the overwhelming weight of state law authority holds that design defects are *not* covered" under "materials or workmanship" warranties and collecting cases) (emphasis in original).

Even if the alleged design defect *were* covered by the express warranty (which it is not), Plaintiff's claim *still* fails because Plaintiff alleges Tesla covered the repair costs for the lone

---

[16] Tesla acknowledges that the omitted portion of the quoted sentence says "and designed."  This lone reference, however, is at odds with the remainder of the Complaint, which describes a design defect.

[17] The Court may consider the warranty because it is referenced in the Complaint and is central to the claim.  *Swartz*, 476 F.3d at 763.

malfunction that occurred during the warranty period. (Compl., ¶ 31). Moreover, Plaintiff's claims cannot be saved by California's "essential purpose" doctrine. *Tabak v. Apple, Inc.,* No. 19-CV-02455-JST, 2020 WL 9066153, at *14 (N.D. Cal. Jan. 30, 2020) (quoting Cal. Com. Code § 2719(2) "a plaintiff may pursue all of the remedies available for breach of contract if its exclusive or limited remedy fails of its essential purpose.") (citation and quotation marks omitted). Indeed, Plaintiff comes nowhere close to alleging what is required under the essential purpose doctrine. That is to say, "the essential purpose doctrine cannot be successfully invoked until there have been repeated, unsuccessful repair or replace attempts during the life of the warranty." *See Tabak v* 2020 WL 9066153, at *14.

Here, Plaintiff concedes that a single door handle was successfully repaired under warranty. (Compl. ¶ 31).  By contrast, he does not allege that he has had to repair the same door handle more than once, and lacks standing to bring this claim on behalf of others who may have suffered such an injury. Furthermore, Plaintiff may not rely on unidentified non-parties who were allegedly denied in-warranty repairs or who have presented their vehicle for repair more than once. *Raynaldo v. Am. Honda Motor Co.,* No. 21-CV-05808-HSG, 2022 WL 4358096, at *13-14 (N.D. Cal. Sept. 20, 2022); *Clark v. Am. Honda Motor Co.,* 528 F. Supp. 3d 1108, 1118 (C.D. Cal. 2021). Thus, even the essential purpose doctrine cannot save Plaintiff's failed breach of express warranty claim.

## G.    PLAINTIFF FAILED TO STATE A CLAIM FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY.

Plaintiff's claim for breach of implied warranty of merchantability fails for two reasons. First, California's implied warranty does not apply.  Second, the alleged defect does not impair the vehicle's "merchantability."

As discussed above, Plaintiff's transaction is governed under Florida law by agreement of the parties.[18]  And even in the absence of the forum selection clause, California law would still not apply because it is limited to goods purchased in California.  The statute plainly provides that "every sale of consumer goods that are sold at retail *in this state* shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code § 1792

[18] *See supra* section III.B.1.
Case No. 5:22-cv-07703-EJD
**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

(emphasis added).   Here, Plaintiff purchased his Vehicle in Florida.[19]   This alone constitutes grounds to dismiss his claim.   *See, e.g., Woo v. Am. Honda Motor Co*, 462 F. Supp. 3d at 1019 (dismissing Plaintiff's claim for breach of implied warranty under California law because he had not purchased his vehicle in California).

Further, even assuming California law applies (which it clearly does not), the alleged door handle issue does not impair the Vehicle's merchantability.   The term "merchantability" is defined as "fit for the ordinary purposes for which such goods are used."   Cal. Civ. Code § 1791.1(a). With respect to a vehicle, the "good" is the car, not the door handle.   Thus, to state a claim, a plaintiff must allege that the vehicle fails to provide safe, reliable transportation. *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.,* No. LA ML19-02905 JAK, 2022 WL 522484, at *809 (C.D. Cal. Feb. 9, 2022).

By contrast, Plaintiff has alleged at worst, a mere inconvenience, complaining that until his driver side door handle was replaced (but not the others), Plaintiff entered his Vehicle via the passenger side. (Compl. ¶ 33).

Plaintiff attempts to bootstrap this inconvenience into a safety issue, but that effort falls flat. He claims "[t]his poses a safety risk because users are potentially locked out of the Vehicles at times of necessity or emergency." (Compl. ¶ 27).   But Plaintiff's own allegations make clear there are no safety implications with regard to door handles. Indeed, the preceding sentence in his Complaint admits that he can "rely on other doors where the Defect has not yet manifested" to enter the car. (Compl. ¶ 27).   Similarly, his claim that the NTTSA and the NTSB "announced they were investigating a fatal vehicle crash where emergency responders were unable to reach the victim, as the Vehicle's door handles failed to present themselves while the car was burning" is an inaccurate recitation of the report he cites in his Complaint.   (Compl. ¶ 28 and n.4).   The actual report says only that "First responders said they couldn't get the car's door handles to work before flames became too intense."   The article is entirely silent as to why or how the door handles did not work, whether it was a result of the crash, or the fire, or even whether the problem was a failure to present. The article is also silent as to the cause of death, which could have occurred on impact given the

---

[19] *See* **Declarations and Exh. 1**.

1   violence of the collision.

2          Plaintiff's conclusory allegations fall dramatically short of the types of vehicle safety issues

3   that rise to the level of unmerchantability.  *See Villanueva v. Am. Honda Motor Co.*, No. CV-19-

4   1390 MWF, 2019 WL 8112467, at *8 (C.D. Cal. Oct. 10, 2019) (allegations of a "persistent braking

5   defect, which impairs safety over an extended period of time" found sufficient to show

6   unmerchantability despite continued use of the vehicles); *Sater v. Chrysler Grp. LLC*, No. EDCV

7   14-00700 VAP, 2015 WL 736273, at *10 (C.D. Cal. Feb. 20, 2015) (breach of implied warranty

8   plausibly alleged where trucks were "useless or unsafe" to drive because of a defect that could lead

9   to a loss of steering control); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1244

10  (C.D. Cal. 2011) (allegations that a "water leak defect poses 'the danger of catastrophic engine

11  and/or electrical system failure as a result of water entering and flooding a vehicle's interior cabin

12  while the vehicle is in operation'" and that "[it] can cause engine failure, suddenly and

13  unexpectedly, at any time and under any driving condition or speed, thereby contributing to traffic

14  accidents, which can result in personal injury or death"); *Sloan v. Gen. Motors LLC*, 287 F. Supp.

15  3d 840, 870 (N.D. Cal. 2018) (finding that overconsumption of engine oil causing engine damage

16  without a warning from the vehicle constituted a material safety-related defect); *Stockinger v.*

17  *Toyota Motor Sales USA Inc.*, No. LACV-17-00035 VAP, 2017 WL 10574372, at *13 (C.D. Cal.

18  July 7, 2017) (allegations of noxious and foul odors combined with airborne mold and microbial

19  contaminants in the passenger compartment was sufficient to support a claim for breach of implied

20  warranty of merchantability).

21         By contrast, Plaintiff's claim that "the Defect's safety issues have been linked to at least one

22  fatality" (Compl. ¶ 28) are wrong on the face of his pleading, and insufficient as a matter of law.

23  *See, e.g.*, *Troup v. Toyota Motor Corp.*, 545 Fed. App'x. 668, 669 (9th Cir. 2013) (the alleged defect

24  merely required plaintiffs to refuel more often); *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F.

25  Supp. 3d at 1093–94 (Plaintiffs' complaints about a too-small fuel tank do not raise a serious

26  question of the Vehicles' fitness for reasonably safe and reliable transportation).

27  / / /

28  / / /

IV.   **CONCLUSION**

For the foregoing reasons, Tesla respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Class Action Complaint without leave to amend.

DATED: February 27, 2023                    Respectfully submitted,

                                                **MUNCK WILSON MANDALA, LLP**

                                       By: */s/ Jenifer C. Wallis*
                                               Jenifer Wallis
                                               J. David Rowe (*Pro Hac Vice*)
                                               Robert Linkin (*Pro Hac Vice*)
                                               Ursula Smith (*Pro Hac Vice*)

                                               Attorneys for Defendant
                                             Tesla Inc.