UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN L. URBAN,

        Plaintiff,

    v.

TESLA, INC.,

        Defendant.

Case No. 22-cv-07703-PCP

**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS AND DENYING MOTION TO STAY DISCOVERY**

Defendant Tesla, Inc. moves to dismiss plaintiff John L. Urban's complaint and to stay discovery pending a decision on that motion. For the reasons that follow, the Court grants the motion to dismiss only as to Urban's request for injunctive relief, and denies the motion to stay discovery.

## BACKGROUND

Urban filed this class action lawsuit against Tesla on December 6, 2022, alleging that Tesla's 2014–2016 Model S vehicles were equipped with defective door handles that routinely failed within only a few years of normal use. On behalf of a nationwide class, Urban alleges violations of: (1) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) breach of express warranty under California law; and (4) breach of the implied warranty of merchantability under California law. Urban seeks class certification, compensatory damages, disgorgement of Tesla's profits, injunctive relief, and payment of reasonable attorneys' fees. Tesla has now moved to dismiss Urban's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). Tesla has also moved to stay discovery pending a decision on its motion to dismiss, or in the alternative, to bifurcate discovery between class certification-related

discovery and merits discovery.

## STANDARD OF REVIEW

A complaint that fails to establish a federal court's subject matter jurisdiction may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). Under Rule 12(b)(1), an attack on jurisdiction "can either be facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A facial attack accepts the truth of the plaintiff's allegations but asserts they are "insufficient on their face to invoke federal jurisdiction"; such an attack is resolved by the district court as it would resolve a motion to dismiss under Rule 12(b)(6). *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When considering such a Rule 12(b)(1) motion, the Court must "take the allegations in the plaintiff's complaint as true." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In a factual attack, however, a defendant "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly brought before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

For cases falling with the Court's subject matter jurisdiction, the Federal Rules generally require a complaint to include only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In considering a Rule 12(b)(6) motion contending that the complaint nonetheless fails to state a claim, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While legal conclusions "can provide the complaint's framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Id.* at 664.

Fraud-based claims are subject to the heightened pleading requirements established by Federal Rule of Civil Procedure 9(b) instead of the more lenient Rule 8 standard. When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or

1    mistake." Fed. R. Civ. P. 9(b). The pleading of fraud must be "specific enough to give defendants

2    notice of the particular misconduct … so that they can defend against the charge and not just deny

3    that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th

4    Cir. 2003). Malice, intent, and knowledge may be alleged generally, however. Fed. R. Civ. P. 9(b).

5                                                           **ANALYSIS**

6              The Court will first address Tesla's arguments regarding Urban's "standing" to bring his

7    various California state law claims (both individually and on behalf of a nationwide class), then, it

8    will consider the adequacy of his CLRA and UCL claims under Rule 9(b), the plausibility of his

9    express warranty and implied warranty claims under Rule 12(b)(6), and Tesla's request to stay

10   discovery.

11   **I.      The Court Cannot Conclude, at this Stage of the Proceedings, that Urban Is
             Categorically Prohibited from Asserting California State Law Claims Individually or**
12           **on Behalf of a Nationwide Class.**

13           **A.      Urban's "Standing" To Pursue Claims Under Florida Law Does Not Present a
                     Question of Article III Standing.**
14

15             "Standing is a jurisdictional element that must be satisfied prior to class certification," *Lee*

16   *v. State of Oregon*, 107 F.3d 1382, 1390 (9th Cir. 1997), and "lack of Article III standing requires

17   dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1),"

18   *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). *See also White v. Lee*, 227 F.3d 1214,

19   1242 (9th Cir. 2000) ("Because standing and mootness both pertain to a federal court's subject-

20   matter jurisdiction under Article III, they are properly raised in a motion to dismiss under Federal

21   Rule of Civil Procedure 12(b)(1)."). Tesla premises its Rule 12(b)(1) motion on its contention that,

22   as a Florida resident, Urban lacks "standing" to assert claims under California law. Tesla's

23   argument assumes that a litigant's standing to pursue claims under the law of a particular

24   sovereign (here, the State of California) presents the same standing inquiry through which federal

25   courts evaluate their Article III subject matter jurisdiction. This assumption is incorrect.

26             It is blackletter law that a plaintiff must meet three requirements to establish Article III

27   standing. First, the plaintiff must have suffered an injury-in-fact which is concrete and

28   particularized as well as actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

United States District Court
Northern District of California

3

(1992). Second, the plaintiff must establish causation between the injury and the defendant's alleged misconduct—the injury must be fairly traceable to the challenged action by the defendant. *Id.* And third, it must be likely that the injury will be redressed by a favorable decision for the plaintiff. *Id.* at 561. These requirements "together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan*, 504 U.S. at 560).

Although Tesla moves to dismiss Urban's complaint under Rule 12(b)(1), Tesla does not contend that Urban fails to satisfy any of the three requirements of Article III standing. Nor could it: Urban alleges that he was injured by having to pay for the repair of two defective door handles, that his injury was caused by Tesla's alleged misconduct in violation of California law, and that a favorable decision by this Court could redress that injury. While a plaintiff's likelihood of procuring a favorable decision may be minimal where the plaintiff cannot assert claims under the laws at issue, that inquiry goes to the merits of the plaintiff's claim, not to the existence of an Article III "Case" or "Controversy." As the Supreme Court has explained, "the absence of a valid … cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998).

In many cases, the distinction between Article III standing and a plaintiff's "standing" to pursue claims under a particular state's laws will be academic because, if the plaintiff cannot pursue a claim under that state's laws, dismissal will often remain proper under Rule 12(b)(6). *Cf., e.g.*, *Lexmark Int'l, Inc.*, 572 U.S. at 134 n.6 (explaining that although proximate cause "is not a requirement of Article III standing," "like any other element of a cause of action, it must be adequately alleged at the pleading stage"). For the purposes of Tesla's motion, however, the distinction is significant. Rather than premising its motion on the allegations in Urban's complaint, Tesla premises its argument primarily on evidence outside the four corners of the complaint, including the choice-of-law and forum selection provisions in Urban's purported purchase agreement, as well as various declarations from Tesla employees. While such additional evidence can be considered under Rule 12(b)(1), it must be disregarded for purposes of Rule 12(b)(6).

In arguing that Urban cannot pursue claims under California law, Tesla attacks the validity of Urban's causes of action, not the existence of an Article III case or controversy. For that reason, the Court will treat Tesla's motion as a Rule 12(b)(6) motion, limit its analysis to the allegations of the complaint, and disregard the evidence submitted by Tesla in support of its motion. *See, e.g.*, *Arroyo v. TP-Link USA Corp.*, No. 14-cv-04999-EJD, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015) (reviewing comparable motion under Rule 12(b)(6) and disregarding evidence submitted in support of motion); *In re iPhone 4S Consumer Litigation*, No. 12-cv-1127-CW, 2013 WL 3829653, at *7 (N.D. Cal. Feb. 24, 2013) (reviewing question whether non-resident plaintiffs could pursue California state law claims against California corporation under Rule 12(b)(6)).[1]

**B.    Urban May Be Able To Establish His Entitlement To Assert California State Law Claims.**

When Tesla's evidentiary submissions are ignored as they must be under Rule 12(b)(6), the question presented to the Court is narrow: Does Urban's allegation that he was a Florida citizen and resident "at all times relevant to this action" on its own establish Urban's inability, as a matter of law, to pursue any claims arising under California law?

"To determine the applicable substantive law, a federal court sitting in diversity applies the choice-of-law rules of the forum." *Narayan v. EGL*, 616 F.3d 895, 898 (9th Cir. 2010). Thus, the Court must apply California's choice-of-law rules to determine whether California law might apply to Urban's claims. Under California's choice-of-law rules, "[w]hether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contacts with the plaintiff's claims." *Opperman v. Path, Inc.*, 87 F.Supp.3d 1018, 1040 (N.D. Cal. 2014). The claims here undoubtedly meet this "sufficiently

---

[1] Tellingly, even cases purporting to apply Rule 12(b)(1) when determining whether an out-of-state plaintiff could assert claims under another state's laws have not relied upon extrinsic evidence. *See, e.g.*, *Corcoran v. CVS Health Corp.*, 169 F.Supp.3d 970, 989 n.15 (N.D. Cal. 2015) ("Where, as here, the challenge is to the [complaint] on its face, the Court's inquiry is substantially similar as under Rule 12(b)(6); the Court looks only to allegations in the complaint and assumes the allegations in the complaint are true."). The courts thus would have reached the same outcome had they applied Rule 12(b)(6) instead of Rule 12(b)(1). While the public records submitted by Tesla are arguably subject to judicial notice, they are irrelevant to the Rule 12(b)(6) issue presented here and will thus be disregarded.

1  significant contacts" test, as Tesla was headquartered in California when it sold Urban his vehicle

2  and it continues to conduct a significant portion of its business in the state.

3       If a plaintiff's claims satisfy this constitutional standard, the burden shifts to the party

4  seeking to apply non-California law to demonstrate that "foreign law, rather than California law,

5  should apply to the … claims." *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th

6  Cir. 2012). In resolving this question, California courts apply a three-step governmental interest

7  test that asks: (1) Whether the relevant law pertaining to the particular issue in question of each

8  affected jurisdiction is the same or different; (2) If there is a difference, whether there is a true

9  conflict based on the particular circumstances; and (3) If there is a true conflict, whether the other

10 state's interest would be more impaired if its policy were subordinated to California's. *Id.* (citing

11 *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 81–82 (2010)).[2]

12      Application of California's three-step governmental test requires a case- and fact-specific

13 analysis that will seldom be amenable to conclusive resolution on a Rule 12(b)(6) motion. *See,*

14 *e.g.*, *In re iPhone 4S Consumer Litigation*, 2013 WL 3829653, at *9 ("California's choice-of-law

15 analysis must be conducted on a case-by-case basis because it requires analyzing various states'

16 laws 'under the circumstances of the particular case' and given 'the particular [legal] issue in

17 question.'"). While Tesla argues in its briefing that the consumer protection statutes of Florida and

18 California are "materially" different, its cursory analysis is unhelpful without further clarity on

19 what legal issues are actually relevant here. At this stage of the litigation, without knowing what

20 legal issues will be material, whether California and Florida differ with respect to those issues, and

21 what facts must be evaluated to determine which state's interests will be most impaired if the other

22 state's law is applied, the Court cannot conclude that Urban's Florida residency and citizenship,

23 on its own, establish that there is no possible set of circumstances under which he could succeed in

24 establishing a right to proceed under California law.

25

26

27  ───────────────

[2] Although *Mazza* considered these choice-of-law issues in the context of a nationwide class
28 action, its analysis was based upon general California choice-of-law principles set forth in non-
class action cases like *McCann v. Foster Wheeler LLC*.

United States District Court
Northern District of California

United States District Court
Northern District of California

**C.    Urban May Be Able To Pursue Claims on Behalf of a Nationwide Class.**

Tesla separately argues that even if Urban is allowed to pursue claims under California law, that law should "not be applied to a nationwide class because the interests of class members' home states outweigh California's interest in having its law applied." Tesla premises its argument on *Mazza v. American Honda Motor Co., Inc.*, in which the Ninth Circuit concluded that a district court had erred in certifying a nationwide class under California's consumer protection laws. 666 F.3d at 594. Although *Mazza* was decided on an interlocutory appeal from class certification, district courts within the Ninth Circuit have applied *Mazza* to strike nationwide class allegations under Rule 12(b)(6). *See, e.g.*, *Woo v. Am. Honda Motor Co.*, 462 F.Supp.3d 1009, 1023–24 (N.D. Cal. 2020) (applying *Mazza* to dismiss nationwide class claims arising under California law and alleging that Honda failed to disclose display screen defects in its cars).

Tesla may be correct that Urban will be unable to satisfy the stringent standard established by *Mazza* at the class certification stage of these proceedings. Dismissal of the nationwide class allegations at this juncture, however, would be premature, for largely the same reasons the Court cannot conclude that Urban himself lacks standing to pursue claims under California law. The Court cannot determine whether a nationwide class might be able to assert California state law claims in this case without knowing the makeup of the class; the states in which putative class members reside; the legal issues that will be relevant to determining Tesla's liability for the class claims; the differences, if any, between the different state laws that could apply to those issues; and the factual context needed to evaluate the impairment of state interests.[3] It is possible, for example, that class members will all reside in states whose laws do not differ in any meaningful respect.[4] Unlike in *Mazza*, it is not yet possible to ascertain the composition of the nationwide class, so the Court cannot conduct the "detailed and fact-intensive inquiry [that] is necessary to

---

[3] Notably, Tesla and Urban disagree about whether the sale of the vehicles at issue here occurred in the states where customers resided or in California. If Tesla structured its sales to ensure that sales occurred in California regardless of its customers' location, that could significantly affect the state interest analysis.

[4] The claims in this case involve the sale of Tesla's electric vehicles in model years 2014, 2015, and 2016. Given the novelty of electric car technology at that time, it is at least plausible that there are states in which Tesla made no sales during the years at issue, or that the vast majority of Tesla's sales occurred in a small number of states with materially indistinguishable laws.

determine the substantive law applicable to class members' claims." *So v. HP, Inc.*, 2022 WL 16925965, at *7 (N.D. Cal. Nov. 14, 2022). The Court will instead defer the question of whether Urban can represent a nationwide class asserting California state law claims against Tesla until the class certification stage of these proceedings.

**II.     Urban Lacks Standing To Seek Injunctive Relief.**

A plaintiff must have Article III standing for each element of relief sought. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (rejecting the argument that constitutional standing in a pending damages suit affords the plaintiff Article III standing to seek a distinct equitable remedy). Tesla argues that, even if Urban has standing to pursue his damages claims, he lacks standing to seek injunctive relief. This equitable remedy "is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Id.* "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Here, Urban seeks injunctive relief in the form of a "corrective notice to Class members regarding the existence and nature of the Defect." Dkt. No. 1 at 20. He alleges in his response to Tesla's motion to dismiss that he "has constitutional standing to request injunctive relief because the Defect still plagues his Vehicle and he is still interested in purchasing other Tesla vehicles in the future." Dkt. No. 39 at 12. Urban's argument fails for three reasons. First, this Court's review is limited to the four corners of the complaint. While Urban expresses interest in purchasing another Tesla in his briefing on the motion to dismiss, Urban fails to allege anywhere in the pleadings that he intends to purchase a Tesla in the future. *In re Toyota RAV4 Hybrid Fuel Tank Litigation*, 534 F.Supp.3d 1067, 1123 (N.D. Cal. 2021) (declining to grant injunctive relief despite a novel theory raised at the motion hearing "as such relief was not requested in the complaint"). Second, while Urban may purchase another Tesla in the future, it is implausible that he would buy a 2014–2016 Model S, which is no longer on the market. And third, the allegations in the complaint do not establish Urban's need for such relief, given that he is already aware of the defect at issue.

United States District Court
Northern District of California

For each of these reasons, Urban's complaint fails to plead facts establishing his entitlement to injunctive relief. The Court therefore grants, with leave to amend, Tesla's motion to dismiss Urban's claim for injunctive relief.[5]

### III.     Urban's Complaint Satisfies Rule 9(b)'s Heightened Pleading Requirements.

Fraud-based claims brought under the CLRA and UCL, like the claims Urban brings here, are subject to Rule 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009). Tesla argues that Urban's CLRA and UCL claims do not meet this standard.

#### A.     Urban Adequately Pleaded a CLRA Claim.

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). To state a duty-to-disclose claim under the CLRA, a plaintiff must show that the defendant knew of the defect and nonetheless sold the product. *See MacDonald v. Ford Motor Co.*, 37 F.Supp.3d 1087, 1092 (N.D. Cal. 2014). Tesla argues that Urban failed to adequately plead Tesla's pre-sale knowledge of the alleged defect. As Rule 9(b) states, however, allegations of knowledge can be made generally. Here, Urban alleges that Tesla had knowledge of the alleged defect through "Vehicle testing data; warranty claims data; consumer complaints made directly to Defendant and collected by NHTSA; and consumer complaints posted on public online forums." Urban further provides a sample of consumer complaints appearing on Tesla's online forum between July 2016 and July 2020. As Tesla correctly notes, these consumer complaints all post-date Urban's purchase of the vehicle, which occurred in April 2015. But even if the specific quoted complaints post-date Urban's purchase (and thus do not establish Tesla's knowledge at the time it sold Urban his vehicle),

---

[5] The fact that Urban has knowledge of the existence and nature of the alleged defect does not necessarily bar his claim for injunctive relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018) ("Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to."). Urban's existing complaint, however, does not plead circumstances under which such relief might be available notwithstanding Urban's knowledge of the defect or mislabeling.

Urban's broader allegation that Tesla acquired knowledge through testing data, warranty claims, and consumer complaints satisfies the Rule 8 plausibility standard that applies to allegations of knowledge per Rule 9(b)'s explicit text.

Tesla also argues that Urban failed to adequately plead reliance. But Urban alleges in his complaint that Tesla made various representations regarding the vehicle's safety and performance on its website while failing to disclose that the door handles would not function properly over the long term. Given Urban's allegation that he used Tesla's website to purchase his vehicle, Urban has adequately pleaded facts suggesting he would have seen such a disclosure had it been provided, and common sense makes clear that a reasonable consumer expects a new car's door handles to function properly. The Court thus concludes that Urban has adequately pleaded reliance.

### B.       Urban Adequately Pleaded a UCL Claim.

The UCL prohibits unfair competition, which means "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17200. When assessing a UCL claim, courts consider each of three prongs—unlawful, fraudulent, and unfair—to determine whether a practice constitutes unfair competition, and "a claim that sufficiently pleads any of these prongs survives a motion to dismiss." *MacDonald*, 37 F.Supp.3d at 1097. The unlawful prong typically requires a predicate violation (e.g., a CLRA violation), the fraudulent prong has the same deceptive practices standard as the CLRA (i.e., the defendant's knowledge of a material defect), and the unfair prong requires a showing of substantial injury not outweighed by countervailing benefits to consumers or competition that could not have been reasonably avoided by consumers. *Id.* at 1098. Given the viability of Urban's fraud-based CLRA claim, Urban's pleading satisfies the fraudulent and unlawful prongs of the UCL. Urban has also sufficiently pleaded a violation of the UCL's unfair prong given his factual allegation that he overpaid for a vehicle that was defective in a manner that had no countervailing benefit to other consumers or competition.

## IV.     Urban's Complaint States Claims for Breach of Express or Implied Warranties.

Tesla further argues that Urban's complaint fails to state claims for breach of express

warranty or breach of implied warranty of merchantability. Neither argument has merit.

### A.     Urban's Complaint States a Claim for Breach of Express Warranty.

Tesla asks this Court to dismiss Urban's claim for breach of express warranty on the

ground that the warranty at issue does not encompass design defects.[6]

The express warranty set forth in the Tesla Model S Owner's Manual reads:

> Subject to separate coverage for certain parts and the exclusions and
> limitations described in this New Vehicle Limited Warranty, the
> Basic Vehicle Limited Warranty covers the repair or replacement
> necessary to correct defects in the materials or workmanship of any
> parts manufactured or supplied by Tesla that occur under normal use
> for a period of 4 years or 50,000 miles (80,000 km), whichever comes
> first.

Under California law, warranties to correct defects in "materials and workmanship," like Tesla's

Model S warranty, do not cover design defects. *In re Toyota RAV4 Hybrid Fuel Tank Litigation*,

534 F.Supp.3d 1067, 1123 (N.D. Cal. 2021).

Tesla argues that Urban "alleges a design defect, albeit inarticulately." Tesla premises its

argument on Urban's claim that defective door handles are prevalent throughout Tesla's vehicles,

contending that such prevalence could result only from a defect in the Model S's design and not

from a defect in its materials or workmanship. By contrast, Urban contends that he does not know

whether the defect was caused by a flawed design or by a manufacturing flaw and does not plead

either theory to the exclusion of the other.

Although Tesla may be correct that the most likely cause of a widespread problem like that

alleged by Urban is a faulty design, it is not implausible that the problem resulted from a

manufacturing issue. In *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1174

(9th Cir. 2010), for example, a widespread problem involving premature tire tread wear was

---

[6] Because Urban references the express warranty throughout the complaint, it is incorporated by
reference into the complaint and can be considered on this Rule 12(b)(6) motion even though
Urban omitted the warranty's language from the complaint. *See U.S. v. Ritchie*, 342 F.3d 903, 908
(9th Cir. 2003) ("A [district] court may … consider certain materials—documents attached to the
complaint, documents incorporated by reference in the complaint, or matters of judicial notice—
without converting the motion to dismiss into a motion for summary judgment.").

United States District Court
Northern District of California

caused by a manufacturing defect rather than a design defect and thus fell within the scope of a "materials and workmanship" warranty. Discovery in this case could reveal a similar problem with Tesla's manufacturing systems. The Court therefore cannot conclude that Urban's claims will necessarily fall outside the scope of the express warranty.

Tesla also argues that Urban lacks standing to assert a breach of express warranty claim because his passenger side rear door handle was repaired under the warranty, so he suffered no breach. Urban contends, however, that the "repair" may have simply replaced the defective handle with another handle that also suffers from a defect in design, manufacture, or material. He also contends that Tesla had an affirmative obligation, based on its knowledge of the problem, to repair all customers' faulty door handles within the warranty period but failed to do so, forcing Urban and others to incur repair costs. These allegations are sufficient to permit Urban to move forward with his breach of express warranty claim.

**B.      Urban's Complaint States a Claim for Breach of Implied Warranty of Merchantability.**

Finally, Tesla contends that Urban has not stated a claim for breach of the implied warranty of merchantability because the door handle failures Urban alleges do not render the vehicles unmerchantable. According to Tesla, the relevant good here is the vehicle, not the door handle, and Urban fails to allege that his "vehicle fails to provide safe, reliable transportation" due to the door handle's failure. *See In re ZF-TRW Airbag Control Units Products Liability Litigation*, 601 F.Supp.3d 625, 809 (C.D. Cal. 2022).

Merchantability in California is defined as "fit for the ordinary purposes for which such goods are used." Cal. Civ. Code § 1791.1(a). If an owner is unable to enter a vehicle due to a defective door handle, it seems unlikely that the vehicle could be used reliably for transportation. Even if owners were able to enter the car through a different door after the driver door failed, for example, most passenger vehicles do not in ordinary use require the driver to enter from a passenger or rear door. Urban also identifies a possible safety risk arising from the alleged defect given that "users are potentially locked out of the Vehicles at times of necessity or emergency," and alleges that a fatality occurring during a fire in a 2016 Tesla Model S was linked to the defect.

Construing the pleadings in the light most favorable to Urban, these factual allegations plausibly support Urban's claim that Tesla breached California's implied warranty of merchantability.

**V.      The Court Will Not Stay or Bifurcate Discovery at this Time.**

Under the Federal Rules, the Court may grant a request to stay discovery if the moving party shows "good cause." Fed. R. Civ. P. 26(c). Ultimately, the district court has "wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988).

Courts in the Ninth Circuit generally apply a two-prong test to determine whether to stay discovery pending a ruling on a motion to dismiss: (1) The moving party must demonstrate the pending motion is potentially dispositive of the entire case; and (2) the Court must determine that the pending motion can be decided absent discovery. *See, e.g.*, *Crowder v. LinkedIn Corp.*, 2023 WL 2405335, at *7 (N.D. Cal. Mar. 8, 2023). Because the Court has decided Tesla's motion to dismiss, the Court denies as moot Tesla's motion to stay discovery pending that decision.

In the alternative, Tesla asks the court to bifurcate discovery into an initial round of discovery focused on class certification and a subsequent round focused on the merits. The decision to bifurcate discovery in a putative class action prior to certification is also committed to the discretion of the district court. *Del Campo v. Kennedy*, 236 F.R.D. 454, 459 (N.D. Cal. 2006). Although bifurcation may be appropriate when the parties are in agreement, bifurcation in the absence of agreement often results in the parties expending significant time and expense fighting over whether particular discovery requests involve class certification or the merits. The Court is reluctant to create such a potential source of litigation. Further, Tesla does not convincingly argue that it will suffer a significant burden if merits discovery is conducted at the same time as class certification discovery. Accordingly, the Court will not at this time bifurcate discovery.

**CONCLUSION**

For the reasons discussed above, the Court denies Tesla's motion to dismiss the four California state law claims in Urban's complaint. The Court grants with leave to amend Tesla's motion to dismiss Urban's request for injunctive relief. Urban must file any amended complaint within **twenty-one (21) days** of the filing of this order, if he so chooses. The Court also denies Tesla's motion to stay (or in the alternative, bifurcate) discovery.

**IT IS SO ORDERED.**

Dated: October 13, 2023

P. CASEY PITTS
United States District Judge